LOLLEY, J.
11 This consolidated appeal arises from the Third Judicial District Court, Parish of Union, State of Louisiana. Albert Ronnie Burrell and Michael Ray Graham appeal the judgment of the trial court denying their claims under La. R.S. 15:572.8 for compensation for wrongful conviction and imprisonment. For the following reasons, we affirm the judgment of the trial court.
FACTS
Albert Ronnie Burrell and Michael Ray Graham each spent more than 13 years on death row at the Louisiana State Penitentiary in Angola after having been convicted of the 1986 double murder of William and Callie Frost (“the Frost murders”). No physical evidence of any nature has ever been obtained which implicates or exonerates Burrell, Graham, or any other persons for these murders. Burrell and Graham were convicted on circumstantial evidence alone. The investigation that led to the arrests was full of mistakes, and most of the testimony that led to the convictions •was later recanted or discredited. The facts of this matter have been considered by both state and federal courts.[1]
On March 3, 2000, the trial court granted a motion for new trial filed on behalf of Graham. He alleged that the state had withheld significant exculpatory evidence and impeachment evidence bearing on the credibility of its main witnesses. In granting a new trial to Graham, the trial court found that had the jury been able to consider the evidence that had been 12withheld, the outcome of the trial likely would have changed. The trial court cited 45 reasons that, considered cumulatively, necessitated a finding that the burden under the applicable code article had been met. The trial court also granted the joint motion for new trial filed by Burrell and the state, vacating the judgment of guilt and the sentence of death.
After new trials were granted, the Louisiana Department of Justice conducted a thorough investigation of all known possible independent sources of credible information. Based on the results of that investigation, the Louisiana Attorney General’s Office filed a dismissal of all charges against Graham and Burrell pursuant to La. C. Cr. P. arts. 691 through 693. At the request of the trial court, reasons for this dismissal were also filed by the attorney general, citing the com- *249 píete lack of credible evidence in this matter. Shortly thereafter, Burrell and Graham were released from the. Louisiana State Penitentiary. Charges against Burrell and Graham have never been reinstated. No one else has ever been charged with the Frost murders.
These actions for compensation for wrongful conviction and imprisonment were filed on August 28, 2008.[2] The Louisiana Attorney General’s Office recused itself from representing the state due to its involvement in the post-trial motions in the criminal proceedings. The district attorney from the Fourth Judicial District was appointed to represent lathe state. On August 6, 2014, after a four-day trial, a judgment and written reasons were issued denying Burrell and Graham compensation. This appeal followed.
DISCUSSION
Burrell and Graham allege the trial court failed to follow the statutory requirements of La. R.S. 15:572.8 regarding procedure, misapplied the burden of proof, and erred in not finding they met the burden. In 2005, the Louisiana Legislature enacted La. R.S. 15:572.8 to create a fund to compensate those who were' wrongfully convicted and imprisoned and an application process to obtain compensation upon proof of factual innocence. The statute was amended in 2007 to change the procedure for füing a petition. The errors alleged in this appeal require an interpretation of the legislature’s intent in enacting La. R.S. 15:572.8.
The purpose of statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the legislature to enact the law. State v. Brooks, 2009-2323 (La.10/19/10), 48 So.3d 219, 222; State v. Tucker, 49,950 (La.App.2d Cir.07/08/15), 170 So.3d 394, 405. The starting point in the interpretation of any statute is the language of the statute itself. Red Stick Studio Dev., L.L.C. v. State ex rel. Dep’t of Econ. Dev., 2010-0193 (La.01/19/11), 56 So.3d 181, 187. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. However, when the language of the law is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the' purpose of the law..' La. C.C. art. 10. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.
The legislative history of La. R.S. 15:572.8 provides interpretive background, particularly when noting the selection of specific words to offer more clarity. It is from these word choices and the context in which they occur that we interpret the legislative intent. The original digest to proposed House Bill No. 663, which led to the eventual creation of La. R.S. 15:572.8, contemplated creating a procedure for filing an application for compensation with the Board of Pardons for the imprisonment of persons found to be innocent. The procedure to be followed would have been governed by the Louisiana Administrative Procedure Act. It is apparent- that the original intent during drafting.of the bill was for this process to be administrative. Amendments to the bill by the Loui *250 siana Senate changed the filing procedure. As it was originally enacted in 2005, La. R.S. 15:572.8 required “applications” for compensation -to be filed in the Nineteenth Judicial District Court, and allotted to the “civil division” as provided by La. C.C.P. art. 253.1 and applicable rules of that court.
In 2007, the statute was amended. Most importantly, the words “applicant” and “applications” were amended to “petitioner” and “petitions.” After'the 2007 amendment, petitioners now file in the district court in which the original conviction was obtained, not the civil division ofjjthe Nineteenth Judicial District- Court. In this 2007 update, the statute shed its administrative'character, and any mention of civil procedure was deleted.
Procedural Requirements of La. R.S. 15:572.8 '
Burrell and Graham contend the trial court failed to follow the statutory requirements by not setting the matter for trial within 45 days after-the filing of the answer by the state. Further, Burrell and Graham claim they pursued a' hearing date to no avail and were prejudiced greatly by this failure of the trial court to set a hearing date because two witnesses died before' the trial. The state argues that Burrell and Graham have waived the right to assert this issue as an error because they never filed an objection for the failure to set the trial within the specified time period. The issue here is whether’ the statute requires the court to set the trial date on its own initiative or if a request must be made by a party.
■ Louisiana R.S. 15:572.8(E) provides:
E. The" attorney general shall represent the state of Louisiana ⅛’ these proceedings. The court shall serve a copy qf any petition filed pursuant to this Section upon the attorney general and the district attorney of the parish in which .the conviction was obtained and upon the court- that vacated or reversed the petitioner’s conviction or upon the pardon board if the conviction was vacated through executive clemency within -fifteen days of receiving such petition. Upon receipt of the-petition and of confirmation of service on the attorney general’s office, the court shall ask the state, through the attorney general’s office, to. respond to the petition within forty-five days of service of the petition. A maximum of two extensions of thirty days may be granted by the court upon written request by the state, for cause shown. The court shall set a hearing within forty-five days of the attorney general’s response. Unless otherwise provided -herein, the Louisiana rules of evidence shall apply; (Emphasis added).
InThe Louisiana Supreme Court has stated La. R.S. 15:572.8 is sui generis and governs a unique situation. Burge v. State, 2010-2229 (La.02/11/11), 54 So.3d 1110, 1113. In Burge, where the main issue was service of process regarding claims under La. R.S. 15:572.8, the Louisiana Supreme Court rejected the argument of the state claiming La. R.S. 13:5107(D) controlled the procedure for service in all suits against the state. The Burge court held that the ordinary requirements for service of process on the state do not apply in this unique situation where the compensation for wrongful conviction statute outlines a specific procedure. It further rejected the reasoning of the appellate court in applying La. C.C.P. art. 1201(C), “because this application is not a civil lawsuit.” Id.
Here, unlike Burge, no specific procedure is provided by the statute. Louisiana R.S. 15:572.8(E) clearly states that the court shall set a hearing within 45 days of the attorney general’s response, but pro *251 vides no remedy for. instances when a failure to set the court date occurs. The benefit of an expeditious determination of claims for compensation for wrongful conviction and imprisonment falls to the petitioner in these matters. At any time after the 45 days had passed, Burrell and Graham could have requested this benefit by filing a motion to set the , matter for trial, but did not do so until almost three years later. ,
Alternatively, given - the fact that this statute appears in Title 15, which addresses criminal procedure, .and considering the declaration of the Louisiana Supreme Court in Burge, supra, if the rules of criminal procedure must apply to the instant matter the result would be the same.
JjLouisiana C. Cr. P. art. 702, regarding setting cases for trial, states:
Cases shall be set for trial by the court on motion of the state, and may be set for trial on motion of the defendant. Courts shall adopt rules governing the procedure for s'etting cases for trial and giving notice thereof. The defendant shall be given notice of trial sufficiently in advance thereof so that he may summon his witnesses.
Further, "regarding pretrial'motions, the date for the hearing is set only after request is made by either the state or the defendant. See La. C. Cr. P. art. 521. It is clear that in order to obtain a trial date a party must request it. Louisiana C. Cr. P. art. 702 also indicates that “the Courts shall adopt rules governing the procedure for setting cases for trial and giving notice thereof.” The Third Judicial District has adopted a specific rule to govern the assignment of cases, filing of motions, and pretrial and status conferences: “The court, in its discretion, may fix any type criminal hearing or trial on, any court day in order to expedite a hearing in any criminal case or proceeding, or to accommodate litigants or attorneys, or for any other reason.” La. R. Cr. Dist. Ct.App. 15.0. This specific rule allows the. trial -court discretion over whether or not to set a trial date on its own initiative.
Considering the overwhelming size of this record, it was-prudent for the trial court to wait until the parties indicated readiness to proceed in this matter. While it is true the matter was not set for trial until more than two yéars after the filing of the answer, this was not due to any error by the trial court. Burrell and Graham argue that they “pursued a court date to no avail,” but this assertion is not supported by the record.
IsTwo petitions were filed in this matter on August 28, 2Q08, one on behalf, of Bur-rell and the other on behalf of Graham. On September 18, 2008, the Center for Equal Justice wrote a letter to the clerk of court, requesting service on the- proper parties as defined by the statute and noticing that it did not initially attach service copies to the petitions filed a month previous. The .Louisiana Attorney General’s Office made written requests for extensions of time on November 14 and December 8, 2008, which were granted. Due to a conflict of interest,.the Louisiana Attorney General’s Office was unable to represent the state and appointed Jerry Jones, the district attorney for the Fourth Judicial District, .to do so shortly before the end of December. Before the expiration of the second extension, Jones filed a motion for extension of time due to the late appointment, which was granted. The state timely filed an answer on January 21, 2009. No other pleadings were filed in this matter until June 26, 2012, when Burrell and Graham filed a motion to consolidate the matters and a motion for summary judgment. Additional counsel was enrolled on-behalf of Burrell and Graham a month later. On October 29, 2012, after the deni *252 al of their motion for summary judgment, Burrell and Graham filed a motion to set the ease for trial and requested a telephone conference to establish a date. On December 20, 2012, after the pretrial conference, an order was issued outlining the time frame for discovery and reserving five days for trial beginning on September 23, 2013.
| oBurrell and Graham claim the substantial procedural delays prejudiced their cases because two key witnesses died during the delay. Burrell and Graham argue that had the matter gone to trial within 45 days of the January 2009 filing of the state’s answer, these witnesses would have been available. However, they were not prejudiced by the delay in time before the eventual trial date, because affidavits of witness statements already exist in the record. Moreover, the trial court explained in its reasons for judgment that it went through every scintilla of evidence in the record, precluding any prejudice perceived by appellants under these circumstances. Most importantly, no request to set a trial date was made by either party until the end of 2012. Further, no request for supervisory review was made to this court; therefore, we find that the petitioners were not prejudiced by any failure of the trial court to follow the procedural requirements of La. R.S. 15:572.8 and thus, this assignment of error lacks merit.

The Standard of Proof under La. R.S. 15:572.8

Burrell and Graham allege .the trial court erred in its application of the standard of proof under La. R.S. 15:572.8, which states, in pertinent part:
A. A petitioner is entitled to compensation in accordance with this Section if he has served in whole or in part a sentence of imprisonment under the laws of this state for a crime for which he was convicted and:
(1) The conviction of the petitioner has been reversed or vacated; and
(2) The petitioner has proven by clear and convincing scientific or non-scientific evidence that he is factually innocent of the crime for which he was convicted.
B. For the purposes of this Section, “factual innocence” means that the petitioner did not commit the crime for which he was convicted and incarcerated nor did he commit any crime based upon the same set of facts used in his original conviction.
|1flA petitioner’s burden of proof is clearly defined by the statute. First, a petitioner must prove a conviction for which he served imprisonment has been either vacated or reversed. The requirements for meeting this first prong are outlined in sections (F) and (G) of the statute, which instruct a petitioner on what proof must be attached to their petition. The trial court’s judgment and reasons for granting a new trial for Burrell and Graham, the order vacating the conviction, and the state’s reasons for declining to prosecute serve to satisfy this burden.[3]
Second, a petitioner must prove by clear and convincing evidence, scientific or not, that he is “factually innocent,” i.e., that he did not commit the crime for which he was convicted or any crime based on the same set of facts used in that conviction. It is plainly evident that more is required to receive compensation than simply showing a conviction has been vacated. *253 Implicit in the inclusion of the second prong of this burden is the intent of the legislature that not every matter in which post-conviction relief is granted will also be a matter in which compensation is awarded.
The intermediate standard “clear and convincing” means more than a “preponderance” but less than “beyond a reasonable doubt.” Mulkey v. Mulkey, 2012-2709 (La.05/07/13), 118 So.3d 357, 369. Under the clear and convincing standard, the existence of the disputed fact must be highly probable or much more probable than its nonexistence. Id. Therefore, to receive compensation, Burrell and Graham must prove it is highly probable |nthat they aré factually innocent of the murders for which they were convicted.
Louisiana R.S. 15:572.8 defines the term “factual innocence,” but gives little instruction as to the amount or type of proof actually needed. Most recently, in an effort to explain factual innocence, the Louisiana Supreme Court stated “[a]ctual innocence also referred to as factual innocence is different than legal innocence. Actual innocence is not demonstrated merely by showing that there was' insufficient evidence to prove guilt beyond a reasonable doubt.” State v. Pierre, 2013-0873 (La.10/15/13), 125 So.3d 403, 409.
State v. Pierre is a post-conviction relief case, which contemplates the level of proof necessary for a free-standing claim of factual innocence not based on DNA evidence. In State v. Pierre, the Louisiana Supreme Court’ did not fully define the burden of proof for factual innocence, but concluded that “whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied- it.” While the standard for factual innocence remains vague, it is clear that a bona fide claim of actual innocence, as basis for post-conviction relief, must involve new, material, noncumulative, and conclusive evidence, which meets an extraordinarily high standard and undermines the prosecution’s entire case. See State v. Conway, 2001-2808 (La.04/12/02); 816 So.2d 290. “A credible claim nevertheless requires new reliable evidence— whether it be \ ^exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.” State v. Pierre, supra at 409 (Emphasis added).
It is clear from a plain reading of La. R.S. 15:572.8 that the legislature intended the petitioner to be able to use “scientific or non-scientific” evidence to prove a claim of factual innocence. Undoubtedly, scientific proof includes DNA, but the legislature intended this burden to be reachable even in the absence of DNA evidence. Based on State v. Pierre, the Louisiana Supreme Court considers this other evidence to include trustworthy eyewitness accounts and critical physical evidence that would lead a reasonable person to believe it is highly probable that .Burrell and Graham are actually innocent.
The factual situations and the relief sought here and in State v. Pierre are different', • but the burden imposed upon petitioners is essentially the same: to prove factual innocence despite a former conviction. Burrell and Graham have already been granted new trials due to, among other things, the state’s violations of the standard set forth in Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). Although they argue that all of the state’s testimonial evidence supporting the original' conviction has been discredited, Burrell and Graham offer no new positive evidence of their factual innocence, and instead they argue that because the state conceded to the “complete lack of credible evidence” this admission, in and of itself, entitles them to *254 compensation. They support this asser-tionjigby claiming,, that clear and convincing is a lower burden than beyond a reasonable doubt.,
Merely showing there is lack of credible' evidence to support a conviction is insufficient to meet the burden of La. R.S. 15:572.8. See In re Williams, 2007-1380 (La.App. 1st Cir.02/20/08), 984 So.2d 789. Louisiana R.S. 15:572.8 allows the petitioner, the former convicted defendant, to take on the burden of proving factual innocence by ■ á clear ■ and convincing standard of proof, whereas the state would have had to prove guilt beyond a reasonable doubt during prosecution. These burdens are very different. Although clear and convincing is the intermediate standard, this does not indicate that a petitioner would have a lesser burden of proof in an action under La. R.S. 15:572.8 than the state would have in. a criminal prosecution under the same set of facts.
Burrell and Graham argue, “in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion.” State v. Dorsey, 2010-0216 (La.09/07/11), 74 So.3d 603, 634. While this statement is absolutely true, it does not support their assertion that their own self-serving testimony denying, any involvement with the crime is enough to prove factual innocence. The Louisiana First Circuit, in Williams, supra, determined that more; than a defendant’s self-serving claims of. innocence would be necessary to prove factual innocence. We too, find- this .to.be the case. • Further, this argument hinges on-the fact finder’s belief of the testimony. As evident by the judgment in this matter, .| 14the trial court did not believe Burrell and Graham’s uncorroborated claims of innocence. -The trial court reasoned that “there- is no physical evidence which either implicates or exonerates [Burrell and Graham] or any other person to the Frost murders.”
Here, during the trial for compensation, the trial court took a recess to review Williams, supra, which it found to be instructive on the issue of the burden of proof under La. R.S. 15:572.8. In Williams, the Louisiana First Circuit determined that during a hearing for compensation, a liberal evidentiary provision applied and necessitated that both the defendant and the state be able to question witnesses about the facts concerning the crime of conviction.. In Williams, a case factually similar to the instant matter, the defendant was convicted by a jury of first degree murder and sentenced to life in prison. Years later an application for post-conviction relief was granted based on the state’s failure to disclose exculpatory material evidence. Williams was granted a new trial, but the state declined to retry him. The murder charges against Williams were later dismissed as moot, and in 2005 he filed an application for compensation for wrongful conviction alleging the dismissal of the charges against him and the state’s decision not to retry him proved his factual innocence. At trial, Williams testified he was “not at all” involved in the murder, but the trial court did not allow any questions regarding the actual facts of the murder. The trial court awarded compensation, after concluding that a presumption of innocence attaches to a defendant once, the state declines to reprosecute the case. The Louisiana First Circuit reversed the judgment of the trial court, |1Band remanded the case to allow for evidence to be presented regarding the murder for which Williams had been convicted, because allowing this type of evidence is the only .way -to fully determine factual innocence. Williams, supra at 794.
*255 Here, the trial court allowed a relaxed evidentiary standard to enable a full and thorough examination of all the facts involved in this matter. • The trial court reviewed over 6000 pages of evidence, and heard testimony of witnesses over a four-day bench trial. Ultimately, the trial court was unable to conclude Burrell and Graham demonstrated factual innocence by clear and convincing evidence.
Notably, an expert, report was,, offered, from a psychological evaluation of Burrell conducted post-conviction. This report proved Burrell’s “severe cognitive limitation.” Burrell and Graham also offered a statement made by Amy Opal (Hutto) in which- she discloses that her statements made during the group interview with the St. Clair family were influenced by the St. Clairs. Amy Opal’s later affidavit stated that she did not ,see blood on Graham as previously reported, but that it had been Kenneth St. Clair who had blood on him. She also stated that it was Kenneth St. Clair she saw counting a lot of money and sitting on the sofa with a man with glasses. At trial the state presented evidence which showed that Burrell matched the description of the man with glasses and that Burrell had been driving Graham and Kenneth St. Clair around on the day of the murders.
L (Although Burrell and Graham successfully impeached the witnesses against them and showed that the investigation into the Frost murders was slipshod and poorly executed, the fact remains: evidence to support their factual innocence is lacking. They have proved that the state did not turn over all the evidence, counsel at the criminal trial was ineffective, and they are entitled to a new trial based upon these, facts. Burrell and Graham essentially requested the trial court to find them factually innocent and entitled to compensation for wrongful conviction based on the same evidence-and facts -upon which the judgment for new trial was granted. The legislature did not intend for the burden under La,.R.S. 15:572.8 to be .the.same, as the burden under La. C. Cr. P. 851. If this had .been the intention, the result would ultimately be that nearly every defendant who was granted a new trial would also be awarded compensation. It is clear that the burden-to prove factual innocence for the purposes of compensation under La. R.S. 15:572.8 is more onerous than the burden to prove entitlement to a new trial.
After a review of this record.in its.-entirety, we find .it reasonable to conclude that Burrell and Graham have not met their burden of proof. Louisiana R.S. 15:572.8 states that the petitioner must prove that he did not commit the crime for which he was convicted or. any other crime based on the same facts. Evidence showed that Burrell may not actually have been able to commit the murder based on his mental condition, and a strong argument was made that the disturbingly inadequate investigation into the Frost murders may have prevented the possibility of recovering evidence |17necessary to prove factual innocence. However, it is reasonable to find that Burrell and Graham were in some way involved in the events of this heinous.and serious crime, regardless of the inadequacies of the investigation. Ultimately, to receive compensation for wrongful conviction and imprisonment requires presentation'of some sort of compelling evidence. Burrell and Graham were unable to present any new credible evidence, such as - trustworthy eyewitness accounts or critical physical evidence, that would lead a reasonable person to believe it highly probable‘that they are factually innocent of these murders. We find; no manifest error in the judgment of-the trial court.
*256 CONCLUSION
Considering the foregoing reasons, we affirm the judgment of the trial court denying Albert Ronnie Burrell and Michael Ray Graham compensation for wrongful conviction and imprisonment under La. R.S. 15:572.8. Costs of this appeal are assessed to petitioners, Burrell and Graham, in accordance with the law applicable when advanced costs are waived.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, MOORE and LOLLEY, JJ.
Rehearing denied.

. See Burrell v. Adkins, 2008 WL 130789 (W.D.La.01/10/08), and State v. Burrell, 561 So.2d 692 (La.1990).

. The petitions were filed under the trial court's civil jurisdiction. Louisiana R.S. 15:572.8(C) requires petitions to be filed in "[t]he district court in which the original conviction was obtained,” and does not explicitly state if a suit under this statute is a criminal or civil filing.

. The record does not contain an order vacating or reversing the conviction and sentence of Michael Ray Graham. If no order exists, Graham's claim for compensation for wrongful conviction and imprisonment does not meet the requirements of La. R.S. 15:572.8(A)(1).