STATE OF LOUISIANA      *      NO. 2020-K-0233

VERSUS      *      COURT OF APPEAL

DARRILL HENRY      *      FOURTH CIRCUIT

     *      STATE OF LOUISIANA

     *

     *

* * * * * * *

*SCJ*

**JENKINS, J., DISSENTS WITH REASONS**

I respectfully dissent from the majority's decision to grant the State's writ, vacate the trial court's judgment, and remand the matter to the trial court for another judgment. For the following reasons, I find the trial court did not abuse its discretion in granting post-conviction relief to the defendant and ordering a new trial. Consequently, I would deny the State's writ.

The defendant's amended application for post-conviction relief clearly sought relief under La. C.Cr.P. art. 930.3(7), arguing that the results of the DNA testing performed pursuant to La. C.Cr.P. art. 926.1 prove by clear and convincing evidence that he is factually innocent of the crimes for which he was convicted. The specific relief sought by the defendant on that ground was a judgment setting aside his conviction and sentence and granting him a new trial.

The record of these post-conviction relief proceedings reveals that the trial court was keenly aware of the nature of the proceedings, the grounds on which the defendant sought post-conviction relief, and the specific relief sought by the defendant.[1] Since March 15, 2019, when the trial court decided "to take up and completely pursue any and all issues regarding so called 'newly discovered' DNA

_____

[1] The trial court judge presiding, *ad hoc*, over these proceedings also presided over the defendant's trial and sentenced the defendant.

1

evidence," before addressing any other claims raised in the defendant's application for post-conviction relief, these proceedings have focused solely on the defendant's claim that he is entitled to relief based on the grounds of La. C.Cr.P. art. 930.3(7). In addition, as to the relief sought, the trial court opened the March 5, 2020 hearing—the final hearing prior to the trial court's ruling in this matter—by stating its presence "to hear oral arguments as it relates the Motion for New Trial the Post Conviction Relief that is sought by Mr. Henry in this matter."[2]

Throughout the written briefs and oral arguments presented to the trial court, both parties argued that the evidence required to prove defendant's post-conviction claim must meet the clear and convincing standard set forth under La. C.Cr.P. art. 930.3(7). Notably, however, only the defendant—in his amended application, oral argument, and post hearing brief—repeatedly defines the clear and convincing standard based on Louisiana jurisprudence,[3] citing, *inter alia*, *Burrell v. State*, 50,157, p.10 (La. App. 2 Cir. 1/13/16), 184 So.3d 246, 253, which states:

> The intermediate standard "clear and convincing" means more than a "preponderance" but less than "beyond a reasonable doubt." *Mulkey v. Mulkey*, 2012-2709 (La. 05/07/13), 118 So.3d 357, 369. Under the clear and convincing standard, the existence of the disputed fact must be highly probable or much more probable than its nonexistence. *Id*.

Finally, I note that, prior to ruling on this post-conviction claim, the trial court held a lengthy two-day evidentiary hearing and reviewed detailed post-hearing briefs. Thus, from my review of the record of these proceedings, the trial court was keenly aware of the particular post-conviction claim presented and the law, facts, and evidence necessary to prove that claim.

---

[2] I note no objection by the State or the defendant to the trial court's characterization of the hearing.

[3] In contrast to the defendant's arguments defining the standard of "clear and convincing", the State does not define or clarify the "clear and convincing" standard in its brief, argument, or the instant writ application. The State merely asserts that the results of the DNA testing of Ms. Watts' fingernail scrapings, and the expert testimony from Mr. Keel regarding that DNA evidence and the results excluding the defendant as the male contributor, are not clear and convincing evidence of the defendant's factual innocence.

2

Nevertheless, the trial court's written ruling on the defendant's post-conviction claim states incorrectly that the matter was before the court on the defendant's motion for new trial based on newly discovered DNA evidence, cites La. C.Cr.P. art. 851(B)(3) as the legal standard for its ruling,[4] and fails to reference the "clear and convincing" standard set by La. C.Cr.P. art. 930.3(7).

Due to the trial court's failure to reference the standard of La. C.Cr.P. art. 930.3(7), the State argues that the trial court failed to rule on the actual post-conviction relief claim before it and asserts that this Court must set aside the trial court's ruling, reinstate the defendant's convictions, and remand the matter to the trial court for a ruling on the post-conviction claim based on the clear and convincing evidence standard. Upon review, the majority agrees. But, while I concede that the trial court referred to the incorrect standard for evaluating the defendant's claim raised under La. C.Cr.P. art. 930.3(7), I disagree that the trial court's ruling must be set aside and the matter remanded for another ruling. There is a sufficient record before this Court to review the defendant's post-conviction relief claim and the trial court's ruling granting relief and ordering a new trial. In addition, the defendant "is entitled to assert any ground fairly supported by the record as a basis for upholding [the court's judgment granting post-conviction relief and a new trial]." *State v. Pierre*, 13-0873, p. 8 (La. 10/15/13), 125 So.3d 403, 408 (citing *State v. Butler*, 12-2359, pp. 4-5 (La. 5/17/13), 117 So.3d 87, 89).

Upon my review, as discussed below, I find that the defendant's claim for post-conviction relief under La. C.Cr.P. art. 930.3(7) is supported both in law and

---

[4] La. C.Cr.P. art. 851(B)(3) provides,

> B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:

> (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.

in fact, and, thus, I find no abuse of discretion in the trial court's judgment granting post-conviction relief and ordering a new trial.

In consideration of this post-conviction claim of factual innocence based on newly discovered evidence, pursuant to La. C.Cr.P. art. 930.3(7), we must first note that the Louisiana Supreme Court has not squarely addressed or provided analysis of such claims. The State also acknowledges this, but relies on the analysis by the First Circuit decision in *State v. Johnson*, 07-0475 (La. App. 1 Cir. 10/10/07), 971 So.2d 1124. I find the State's reliance on the First Circuit's decision to be misplaced and unpersuasive, given that the First Circuit's decision became moot due to the case's subsequent procedural history. Notably, the Louisiana Supreme Court granted certiorari on that case; then, during the course of review, the Court remanded to the trial court for a ruling on other post-conviction relief claims while retaining jurisdiction over the defendant's DNA claim. On remand, the trial court granted the defendant's post-conviction relief on *Brady* claims, set aside his conviction, and granted him a new trial; then, after denying the State's writ on that judgement, and in light of the trial court's granting a new trial, the Court found the defendant's writ, and any other claims for relief at that time, to be moot and pretermitted any discussion of the defendant's DNA claim. *State v. Johnson*, 07-2034, pp. 2-3 (La. 10/9/09), 23 So.3d 878, 879-80 ["*Johnson* II"]. I find that subsequent procedural history notable and necessary to understanding Chief Justice Johnson's dissent in *Johnson* II, which does provide actual guidance for analyzing a post-conviction claim of factual innocence based on DNA evidence.

In dissent to the Louisiana Supreme Court's decision to moot the defendant's writ, Chief Justice Johnson noted that the case presented the *res nova* issue and the first opportunity for the Court "to give direction to the trial courts on how to apply and weigh the science of [DNA] testing to determine factual

innocence" in post-conviction relief applications. *Johnson* II, 07-2-34, p. 1, 23 So.3d at 880. Chief Justice Johnson then provided an analysis both of the applicable law and the case before the Court, and, ultimately, she found that the First Circuit erred in reversing the trial court's ruling granting the defendant post-conviction relief pursuant to La. C.Cr.P. art. 930.3(7), because the trial court did not abuse its discretion in that ruling. Though her dissent is not controlling, I find the following discussion in Chief Justice Johnson's dissent provides a significant, practical guide for our review of this case:

> This case presents a critical juncture between science and law for which we are obliged to do a thoughtful examination of the requirements and remedies contemplated by Louisiana Code of Criminal Procedure Articles 926.13 and 930.3(7),4 and to give meaningful guidance to the lower courts on the interpretation of these two codal articles.
>
> *        *        *
>
> [W]hen examining a claim for Post Conviction Relief based on DNA evidence, courts should weigh the evidence produced in application for DNA testing under La. C. Cr. P. art. 926.1, and the DNA results obtained under La. C. Cr. P. art. 930.3(7), against the State's evidence to determine whether it was reasonably probable that the result of the proceeding would have been different, had the DNA evidence been available.
>
> The clear wording of La. C. Cr. P. art. 930.3(7), states that the *results from DNA testing*, pursuant to an application for Post Conviction Relief, under La. C. Cr. P. art. 926.1, *will prove by clear and convincing evidence* that the petitioner is *factually innocent* of the crime for which he was convicted (the DNA in question does not match that of the petitioner). To prove a matter by clear and convincing evidence means to demonstrate "the existence of the disputed fact must be highly probable, that is, much more probable than its non-existence."
>
> La. C. Cr. P. art. 930.3(7) does not require that the DNA test results exonerate a defendant, or establish actual innocence. The clear and convincing proof contemplated by the statute is a DNA result that excludes a defendant, after an evidentiary finding that there is a reasonable likelihood that the requested DNA testing will resolve the doubt, and establish the innocence of the defendant.
>
> In light of the facts the defendant, Anthony Johnson, (Johnson) presented to invoke the application of DNA testing, Johnson clearly showed that there existed articulable doubt, as to his guilt, based on competent evidence, and that DNA testing would resolve that doubt and establish his factual innocence. Instead of contesting these facts

that were presented by Johnson as reasons to doubt his guilt, the state *conceded* that DNA testing was warranted under these circumstances. There is no issue as to the credibility of the test results since the defense and the State jointly selected the laboratory that would conduct all of the DNA testing (Reliance Technologies, Inc.). Further, the state could not rebut the scientific studies, and expert testimony offered by the defendant which established that foreign DNA under fingernails is usually a result of a violent struggle or intimate conduct. Against the backdrop of all the facts, and evidence presented establishing reasons to doubt the correctness of Johnson's conviction, combined with the DNA results, the District Court correctly granted Johnson a new trial.

Since the state conceded the defendant's right to DNA testing in the case at bar, there was no need to consider whether the defendant met his burden of proof under Article 926.1 Armed with his results, Defendant made his case at the post conviction hearing that the DNA test results resolved the doubt, and established his factual innocence by clear and convincing evidence.

\* \* \*

A trial court's grant of a motion for new trial should only be reversed upon a finding that the trial court abused its wide discretion. In evaluating whether newly discovered evidence warrants a new trial, the test to be employed is not simply whether another trier of fact might render a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. When presented with a motion for a new trial based on newly discovered evidence, the trial judge's duty is not to weigh the new evidence as though he were a jury determining guilt or innocence; rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment.

Considering the wealth of exculpatory evidence Johnson presented pursuant to La. C. Cr. P. art. 926.1, and the DNA results, this trial court judge did not abuse his discretion in ruling that Johnson had proven his factual innocence. Thus, in my view, the Court of Appeal erred in reversing the decision of the district court, and in reinstating the conviction for second degree murder.

*Johnson* II, 07-2034, pp. 1-8, 23 So.3d at 880-84. (emphasis in the original)

According to the above analysis offered by Chief Justice Johnson, once the defendant's DNA testing application pursuant to La. C.Cr.P. art. 926.1 is granted, then "[t]he clear and convincing proof contemplated by [La. C.Cr.P. art. 930.3(7)] is a DNA result that excludes a defendant, **after** an evidentiary finding that there is a reasonable likelihood that the requested DNA testing **will resolve the doubt**, and establish the innocence of the defendant." *Johnson* II, 07-2034, p. 4, 23 So.3d at

6

882 (emphasis added). In other words, once the trial court grants DNA testing based upon the required finding, under the high burden of La. C.Cr.P. art. 926.1(C), that DNA testing is likely to resolve articulable doubt and establish the defendant's innocence, then DNA results that exclude the defendant as the perpetrator provide the necessary proof to meet the standard of clear and convincing evidence under La. C.Cr.P. art. 930.3(7).

La. C.Cr.P. art. 926.1 provides, in pertinent part, as follows:

B. An application filed under the provisions of this Article shall comply the provisions of Article 926 [required allegations of a petition for post-conviction relief] and **shall allege all of the following**:

(1) A factual explanation of why there is an **articulable doubt**, based on competent evidence whether or not introduced at trial, as to the guilt of the petitioner in that **DNA testing will resolve the doubt and establish the innocence of the petitioner**.
(2) The factual circumstances establishing the timeliness of the application.
(3) The identification of the particular evidence for which DNA testing is sought.
(4) That the applicant is factually innocent of the crime for which he was convicted, in the form of an affidavit signed by the petitioner under penalty of perjury.

C. In addition to any other reason established by legislation or jurisprudence, and whether based on the petition and answer or after contradictory hearing, **the court shall dismiss any application filed pursuant to this Article unless is finds all of the following**: (emphasis added)

(1) There is an articulable doubt based on competent evidence, whether or not introduced at trial, as to the guilt of the petitioner and there is a reasonable likelihood that the requested DNA testing will resolve the doubt and establish the innocence of the petitioner. **In making this finding the court shall evaluate and consider the evidentiary importance of the DNA sample to be tested**.
(2) The application has been timely filed.
(3) The evidence to be tested is available and in a condition that would permit DNA testing.

In this case, the defendant's application for DNA testing, pursuant to La. C.Cr.P. art. 926.1, presented detailed factual allegations as to why there is articulable doubt as to the defendant's guilt. In particular, the defendant noted that

the State's case relied exclusively on disputed eyewitness identifications; that no physical, forensic evidence was found or introduced at trial linking the defendant to the crimes; and that DNA evidence was recovered at the scene but not tested before trial. The defendant argued that results of DNA testing, of the wallet and the fingernail scapings, excluding the defendant from that critical crime scene evidence could conclusively establish that the defendant was not the perpetrator and could link the crimes to an unknown third party perpetrator. The defendant's application also describes the advances in DNA testing technology and points out that the mini-STR testing being requested was used recently to test DNA from a 1993 case, the results of which exonerated that defendant and conclusively identified another perpetrator. A review of the defendant's application reveals that it complies with the required allegations of La. C.Cr.P. art. 926.1.

In response to the defendant's application for DNA testing, the State did not object to the request for DNA testing, but stated that it did not concede that the results of the DNA testing could prove the defendant's innocence. Instead, the State had no objection in consideration that the defense would be paying for the testing at the approved Forensic Analytical Sciences (FAS) lab in California. The State, thus, attempted to defer any argument as to the competency of the evidence until after receiving the results of the DNA testing. I find this highly problematic. If the State disputes that there is articulable doubt as to the defendant's guilt, contests the adequacy and competency of the evidence—that presented at the trial convicting the defendant and that sought to be tested—offered as articulable doubt of the defendant's guilt, or contests that the results of DNA testing would establish the innocence of the defendant, then the appropriate time for the State to raise those objections is, initially, when the defendant files an application for DNA testing.

In order for the defendant to be granted DNA testing by the trial court, the trial court must find that (1) there is an articulable doubt based on **competent evidence** as to the guilt of the petitioner and (2) there is a **reasonable likelihood that the requested DNA testing will resolve the doubt and establish the innocence of the petitioner**.

Here, the State waited to contest the adequacy and competency of evidence tested from Ms. Watt's fingernail scrapings or her wallet, until after the DNA results were obtained and the defendant presented expert testimony excluding the defendant as the source of any of the DNA evidence. In addition, the State waited to contest the defendant's argument that the eyewitness identifications were unreliable and that DNA evidence would resolve the articulable doubt of his guilt and establish his innocence. Arguably, the State waived those arguments as to articulable doubt of the defendant's guilt and the adequacy of the forensic evidence from the wallet and fingernail scrapings that were tested.

But, even in consideration of the State's arguments, I find that the defendant has met both the burden of La. C.Cr.P. art. 926.1 and 930.3(7), establishing his factual innocence by clear and convincing evidence, and that the trial court correctly granted post-conviction relief to the defendant and ordered a new trial.

The defendant presented expert testimony from Alan Keel, an expert in forensic serology and DNA analysis, who testified regarding the DNA results from the fingernail scrapings recovered from Ms. Watts. Mr. Keel testified that foreign DNA from under a person's fingernails is usually the result of intimate, prolonged, or violent contact, and foreign DNA from a victim's fingernails is typically probative in violent confrontational cases, such as this. Most importantly, Mr. Keel testified, as to his analysis of the DNA results from the fingernail scrapings in this case, that "some if not all of the male DNA that was recovered" from Ms.

9

Watt's fingernails "likely originates from her assailant" and that the defendant was "absolutely excluded as the source of that DNA."

Furthermore, as noted in the trial court's ruling and by this Court in the direct appeal of this case, the State's case against the defendant relied exclusively on eyewitness identifications by persons unfamiliar with the defendant. On appeal, this Court reviewed the sufficiency of the evidence used to convict the defendant, noting, "no forensic evidence links the defendant to the victims or to the crimes, only eyewitness testimony and the defendant disputes the trustworthiness of that evidence. When identity is disputed, the State must negate any reasonable probability of misidentification." *State v. Henry*, 13-0059, p. 4 (La. App. 4 Cir. 8/6/14), 147 So.3d 1143, 1147. Therefore, the new DNA results excluding the defendant as the source of the DNA evidence from Ms. Watt's fingernails, combined with the expert testimony that that DNA is most likely from the perpetrator, make it highly probable that the State would not be able to negate any reasonable probability of misidentification.[5]

Considering the evidence the defendant presented pursuant to La. C.Cr.P. art. 926.1, and the DNA results and expert testimony that excludes the defendant as the source of the only forensic evidence found at the scene of the crimes, I find that

---

[5] In addition, at trial, the defendant attempted to introduce expert testimony regarding eyewitness identifications, but the trial court refused to allow testimony from experts offered by the defendant. Raising that as an error on appeal, this Court discussed the four hearings held on the defendant's motion to suppress the eyewitness identifications. The Court noted the time lapses and discrepancies in the identifications and noted that at least one aspect of the photo line-up procedure by the Detective was "problematic;" but, the Court found no abuse of discretion in the trial court's refusal to allow expert testimony on eyewitness identification, in accordance with "current controlling jurisprudence of the Louisiana Supreme Court" disfavoring, though not outright barring, expert testimony on eyewitness identification. *Id*., p. 25-26, 147 So.3d at 1158 (citing *State v. Young*, 09-1177, pp. 13-14 (La. 4/5/10), 35 So.3d 1042, 1049, 1050). Significantly, since that decision of the defendant's direct appeal, the Louisiana Legislature amended La. C.E. art. 702 to provide specifically for the admissibility of expert witnesses on the issue of memory and eyewitness identification, generally, while prohibiting an expert from offering an opinion as to the accuracy of an eyewitness's identification in a case. *See* La. Acts. 2019, No. 115, §1. Therefore, at a new trial, in consideration of the lack of physical and forensic evidence linking the defendant to these crimes, expert testimony on the eyewitness identifications, which the defendant has consistently disputed, would likely be admissible. Notably, at the first trial, the State did not have to negate the reasonable probability of misidentification presented through expert testimony on eyewitness identifications.

the trial court did not abuse its discretion in granting the defendant post-conviction relief pursuant to La. C.Cr.P. art. 930.3(7) and ordering a new trial. While the trial court did not reference the correct statute and did not state a finding that the DNA evidence proves by "clear and convincing evidence", I find adequate legal and factual support for the trial court's stated finding and for the relief granted.

Clear and convincing evidence is defined by Louisiana jurisprudence as evidence making the existence of the disputed fact highly probable, or much more probable than its nonexistence. *State in the Interest of A.L.D.*, 18-1271, pp. 4-5 (La. 1/30/19), 263 So.3d 860, 863; *C.L.S. v. G.J.S.*, 05-1419, p. 31 (La. App. 4 Cir. 3/7/07), 953 So.2d 1025, 1040. The results of the DNA testing in this case, excluding the defendant, make the dispute fact of his innocence much more probable than not, and, thus, "it is highly probable that the newly discovered evidence would have produced a different result at the defendant's trial", as found by the trial court. Consequently, I find no abuse of discretion in the trial court's ruling granting the defendant post-conviction relief and ordering a new trial.

11