JOHNSON, C.J.
Bln this custody dispute, the trial court ordered a change in custody, finding the father satisfied the requirements of Ber *359 geron v. Bergeron[1] by establishing that any harm caused by a modification of a 2004 custody decree would be substantially outweighed by its advantages to the child. The trial court’s ruling was reversed by the court of appeal. We granted this writ application to review the correctness of the court of appeal’s ruling. Because we find no abuse of discretion by the trial court in modifying custody, we reverse the ruling of the court of appeal and reinstate the ruling of the trial court.
FACTS AND PROCEDURAL HISTORY
Phillip Ray Mulkey (“Phillip”) and Vicki Juanita Harris Mulkey Pyles (“Vicki”) were married on June 26, 1993, and established their matrimonial domicile in Winnsboro, Louisiana. They had one child during their marriage, Matthew Harris Mulkey (“Matthew”), who was born on January 19, 1998. The couple was divorced by judgment rendered on March 5, 2001. The parties thereafter jointly entered into two separate consent decrees regarding custody of Matthew. Essentially, the consent [¡.decrees provided the parents with seven-day alternating custodial periods with Matthew.
Ultimately, the consent decrees were not able to be maintained. In 2003, both parties petitioned the court to modify the custody plan then in effect. Vicki filed a “Rule to Modify Custody and Increase Child Support.” As grounds for her motion seeking domiciliary custody of the minor child, Vicki alleged the following material changes in the lives of the parties: (1) Matthew, then age five, would begin his formal education in August 2003; (2) Vicki had remarried and had moved to Ruston, Louisiana; (3) the seven-day alternating custody schedule was no longer a viable custody plan because of Matthew’s schooling requirements; and (4) Vicki and her family could provide Matthew with a stable home. In addition, Vicki sought child support and requested that Phillip be ordered to pay his share of the minor child’s medical expenses.
Phillip filed an “Answer to Rule to Modify Custody and Increase Child Support and Reconventional Demand” wherein he sought to be named the domiciliary parent based on the following grounds: (1) Matthew had resided with him in Franklin Parish since his birth; (2) Phillip had been responsible for Matthew’s care and rearing while providing him with a stable home; and (3) Phillip and his family could provide Matthew with a superior custodial environment.
After a trial, the court rendered judgment on June 29, 2003, awarding the parties joint custody of Matthew, with Vicki named the domiciliary parent. Vicki was also granted primary custody during the school year. The trial court signed a judgment to this effect on December 9, 2004. No modification was sought by the parties until 2011.
On July 28, 2011, Vicki filed a “Rule for Payment of Medical Expenses and RRule to Show Cause for Judgment of Past Due Medical Support, Contempt, and Attorneys Fees” alleging Phillip failed to pay his share of Matthew’s uncovered medical expenses and extracurricular activities. In addition, Vicki requested an increase in child support.
In response, Phillip filed an “Answer and Reconventional Demand” seeking to be named the domiciliary parent. Phillip also requested that his child support obligation be terminated, and that Vicki be ordered to pay him child support. As grounds for the modification of custody, *360 Phillip asserted several particular changes in circumstances since the previous custody order. Notably, Phillip asserted that Vicki voluntarily changed employment requiring night shift work, thus she is not home at night with Matthew; Matthew has a history of excessive absences and poor academic performance at school; Matthew has expressed a preference to live with Phillip; and Phillip has remarried and he now lives in a spacious home with Matthew’s half-siblings, with whom Matthew has a close bond.
After a Hearing Officer Conference, the Hearing Officer recommended a finding that Phillip did not carry his heavy burden of proof for custody modification pursuant to Bergeron. Phillip timely filed an objection to the Hearing Officer’s recommendation. The parties resolved some issues prior to trial, leaving only the issues of custody and support before the trial court.
After trial and submission of post-trial briefs, the trial court determined that although Phillip did not demonstrate that the present custody arrangement was harmful to Matthew, modification of the 2004 custody decree was nevertheless in Matthew’s best interest. The court named Phillip the primary domiciliary parent, and made a finding that any harm caused by the modification would be substantially outweighed by the advantages to Matthew.
|4In lengthy reasons for judgment, the trial court found that after the 2004 custody decree was rendered, there was a material change in circumstance in the lives of Vicki, Phillip, and Matthew. The court noted Matthew was five when the 2004 decree was rendered, and he is now fourteen, has matured, and his needs, activities and interests have changed.[2] Matthew confirmed that he wanted to live with his father, testifying: “I’ve lived most of my life at my mama’s [in Ruston] so I want to live down here [at my father’s house in Winnsboro] for the rest of the time I have until I move and get my own house.” After questioning Matthew at trial, the court determined he was mature enough to express his parental preference.
The court further noted that Vicki voluntarily changed her employment since custody was originally set, requiring her to frequently work nights. Thus, she was at work when Matthew went to bed and woke up and Matthew had to prepare his own breakfast each morning as well as several of his evening meals, which he generally eats by himself in his room. The court noted that at his father’s house Matthew enjoys outdoor activities such as fishing, hunting and riding dirt bikes with Phillip and his cousins. Matthew is also involved in church and youth group activities offered at Life Church where Phillip and his family attend. Testimony revealed the family ate meals together, played games and watched television together.
The court also recognized that Matthew developed several medical conditions since the 2004 decree. He now has Type I diabetes, requiring Matthew to wear an insulin pump which is monitored throughout the day. Vicki also testified he has hypothyroidism and takes medication to control that condition. Vicki complained that Phillip did not participate in Matthew’s medical care, and failed to monitor his insulin needs and dietary restrictions. Phillip stated he offered Matthew a balanced diet, but | ¡¡admitted that Matthew is primarily in charge of monitoring his insulin pump and adjusting his own medication. Phillip criticized Vicki for over-medicating Matthew, and claimed she failed to regularly inform him about Matthew’s medical treatment.
*361 Another change noted by the trial court was that Vicki’s husband had developed medical problems since the 2004 trial, including depression, CREST Syndrome and Sarcoidosis. The court noted that as a result of these conditions and other extraneous reasons, he has been unable to maintain steady employment.
The court observed that in the past, Matthew excelled in school and won many academic awards until he reached seventh grade. His performance in the eighth grade revealed a significant decline, and he appears to prefer playing video games to doing school work. In addition, whereas he formerly participated in various extracurricular activities, the court noted Matthew reduced his activities in the eighth grade year.
Having found a material change in circumstances, the trial court then evaluated the case using the Bergeron requirements. The court first made a finding that the present custody arrangement was not so deleterious to Matthew as to justify a modification of the custody decree. Thus, the trial court went on to consider whether Phillip proved by clear and convincing evidence that the harm caused by a change of environment was substantially outweighed by the advantages to Matthew. After considering the testimony and evidence, the court found this is a case where modification of the considered custody decree was in the child’s best interest even though Phillip was unable to show that the present custody was harmful to Matthew. The court explained:
Vicki was awarded the position of primary domiciliary parent [in 2004] because she offered Matthew more stability and permanency in her family unit, better after-school care and slightly superior parenting abilities at that time. Now that he is fourteen and will be entering high school in the fall, |fiMatthew has matured and his world has expanded. He is now involved in after-school, church, athletic, outdoor and social activities which were not part of his life when the case was originally heard. He has expressed a desire to live with his dad and to enjoy the relatives, friends and activities offered in the Winnsboro area.
* * *
There can be no doubt that Vicki has provided Matthew with an adequate environment for the past nine years and that Phillip can provide the minor child with an equally adequate environment for the next four years.
* ⅝ *
This court was impressed with Matthew’s ability to communicate his sincere desire to live with his father the next four years before he reaches the age of majority. His testimony did not appear to reflect coaching or pressure tactics by Phillip or anyone else. Therefore, his expressed preference will be given great weight as I apply the Bergeron standard to the facts of this case.
With his maturity, however, comes increased opportunities and greater responsibilities. Matthew’s high school schedule and his academic work load will undoubtedly become increasingly more demanding. His social life will likely expand, presenting new challenges for his primary domiciliary parent. Experience dictates that relationships with his peers will become more and more important as Matthew seeks to find his identity as a developing teenager.
Vicki has tried many ways to help motivate the minor child to excel scholastically like she did. She has also offered him social activities and personal development opportunities. Vicki is to be commended for her efforts in this re *362 gard. Nevertheless, Matthew remains satisfied with a level of scholastic performance well below his parent’s expectations.
The testimony reflects that Matthew enjoys playing with neighbors his age in Ruston. However, the minor child confirmed he is looking forward to making new friends in Winnsboro. Matthew also explained he would like to be given the chance to participate in the social activities and personal development opportunities offered in Winnsboro. Phillip stated he is convinced he can provide Matthew with the proper motivation to succeed in all areas of life. Phillip’s wife, Jessica, is a school teacher. She has also offered her assistance in helping the minor child with his school work. After hearing the testimony, this court is concerned about Vicki’s ability to deal with the challenges Matthew will undoubtedly face in the next few years. Reading between the lines of Matthew’s testimony, it appears that if Vicki is maintained as the primary domiciliary parent, Matthew will feel he has been deprived of the relationships and activities he has come to cherish in Winns-boro. An undercurrent of anger or hopelessness may result if Matthew perceives he is being forced to miss out on the life offered by his father. While the minor child’s disappointment with this | ycourt’s decision and his anticipated attitude in the home of his mother should not be a controlling factor, it is an important consideration.
[[Image here]]
[I]n 2003 this court determined that Vicki had a slight edge over Phillip in the La. C.C. art. 134 factors relating to stability, permanency of the family unit, after-school care and parenting abilities. Over the past nine years, however, the record reflects that Phillip has proven to be a very capable father and husband who provides his family with a stable, loving home environment.
[[Image here]]
The clear and convincing evidence presented shows that Matthew should not suffer any significant harm caused by a change of his established mode of living. Matthew has spent much of his childhood and his adolescence with his father. He has been in Phillip’s care every other weekend, one-half of the major holidays and most of the summers for the past nine years. Consequently, the transition from one home to the other should not require a great deal of adaptation by Matthew or Phillip and his family. Also, with expanded custodial privileges awarded to Vicki, she should be able to maintain meaningful, frequent and continuing contact with the minor child.In addition, any harm caused by a modification of the 2004 custody decree will be substantially outweighed by its advantages to Matthew. The minor child already has significant connections with friends, family and activities in Winns-boro. Phillip and his family appear to be able and willing to provide Matthew with a supportive, nurturing and comfortable place to live and grow. His lack of interest in school, his perceived need to build self-esteem and self-confidence and his desire to live primarily with his father for the next four years present compelling reasons to modify the present custodial arrangement.
Considering the Bergeron burden of proof, this court finds that the minor child’s best interests require his placement with the parent whose home environment can provide him with the greatest opportunity to thrive and succeed scholastically, spiritually, socially, emotionally and physically during this very important stage of his adolescent life, as *363 he prepares for manhood. Phillip has proven that he is that parent in the mind of this court.
Vicki appealed. The court of appeal reversed the trial court and reinstated the original custody plan.[3] In reversing the trial court, the court of appeal agreed this case did not involve deleterious circumstances. Accordingly, the court went on to review the trial court’s application of the alternative ground in Bergeron, ie., whether Phillip met his burden of showing by clear and convincing evidence that the harm likely to|sbe caused by the change of environment was substantially outweighed by the advantages to Matthew of having Phillip as domiciliary parent with primary custody. The court of appeal agreed with the trial court that the transition from Vicki’s home to Phillip’s home would not require excessive adaptation because Matthew was already accustomed to spending alternate weekends, half of the holidays, and most of every summer at Phillip’s house. However, the court of appeal noted that Matthew’s time at his father’s house was largely “play time,” without the stresses of attending school on time, doing homework, participating in extracurricular activities, or going to the doctor. The court of appeal acknowledged that Vicki’s job required her to be away from home approximately half of the school nights, but noted Matthew had an established routine at Vicki’s house which fostered a degree of personal responsibility, independence and reliance.
The court of appeal further stated:
After review, we conclude that the record presents little evidence to support the conclusion that making Phillip domiciliary parent offers clear and substantial advantages for Matthew. Phillip has shown little interest in Matthew’s schoolwork for most of the years he has attended school. Although it is clear that Vicki has not fully complied with the custody decree requirements of sharing information regarding to Matthew’s school work, such as sending him copies of report cards, Phillip apparently never protested or exercised his right to demand such information. There is really no reason to think that Phillip will now take a more active interest in Matthew’s school work other than blaming Matthew’s recent poor performance on Vicki. While Matthew, like many children, is not necessarily a model student achieving in the top of his class, the evidence indicates that historically he has made average to above average grades in most courses. When he has struggled with a course, Vicki obtained tutoring for him at her own expense. Matthew’s recent struggles in school or lack of interest appear to coincide with the instant custody dispute. He will be transferring to another school if Phillip is named the domiciliary parent. We suggest that Matthew’s belief that he will be transferring to Franklin Academy [in Winnsboro] in the near future and the negative impact of the instant custody dispute has likely contributed significantly to his lack of interest in his school work.
We also note that the trial court did not consider the impact this | ^modification would have regarding Matthew’s medical issues, especially his Type I diabetes. Our review of the record indicates that Vicki has carried the load completely in this regard by taking Matthew to the physician treating his diabetes every three weeks and daily making sure Matthew takes the appropriate amounts of medication. Matthew also apparently has other medical issues, such as hypo *364 thyroidism (which could explain his recent academic disinterest), suffers from asthma, and has ear wax buildup problems that require periodic attention. Phillip’s testimony indicates that he believes Vicki takes him to the doctor too often and pretty much leaves it up to Matthew to take his medications. There is no medical expert testimony in the record to suggest that Matthew’s medical problems are not real and serious. Considering that Vicki has historically been the person to tend to Matthew’s medical issues, we find this to be a decisive factor in the instant dispute.
Next, the court of appeal discussed the great weight the trial court gave to Matthew’s stated preference to live with his father. The court agreed that Matthew had reached an age such that his preference can be seriously considered, however the court noted that Matthew’s preference to live with his father may have been influenced by the fact his father lives on eleven acres of land offering many activities that appeal to a teenage boy, including fishing, and riding the dirt bike and four-wheeler. The court of appeal observed that Matthew already enjoys these activities during the ample visitation time he already spends at his father’s house.
In conclusion, the court of appeal stated: We therefore find that Phillip has not met his burden under Bergeron to warrant a change in the considered custody decree rendered December 9, 2004. For this reason, we conclude that the trial court abused its discretion in modifying the previous custody order and designating Phillip as the domiciliary parent.
Accordingly, the court of appeal reinstated the 2004 custody decree.
Phillip filed a writ application in this court, which we granted.[4]
DISCUSSION
The primary consideration in a determination of child custody is the best | ¶ ninterest of the child.[5] This applies not only in actions setting custody initially, but also in actions to change custody.[6] A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children.[7] In an action to change custody rendered in a considered decree, additional jurisprudential requirements set forth by this court in Bergeron v. Bergeron, supra, are also applied.[8] There is no question in this case that the 2004 custody award is a considered decree. Thus, the burden of proof on the party seeking to modify custody is dictated by Bergeron.
In Bergeron, this court considered whether the heavy burden of proof rule in modification cases should be continued.[9] That rule provided that “when a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to *365 which they are accustomed.”[10] While recognizing that the heavy burden of proof in custody modification cases was justified for several reasons, we were convinced that in a narrow class of cases a modification of custody may be in the child’s best interest even though the moving party is unable to show that the present custody is deleterious to the child. Recognizing that the heavy burden of proof rule could inflexibly prevent a modification of custody that is in the child’s best interest, and also cognizant of the need to protect children from the detrimental effects of too |nliberal standards in custody change cases, we restated the burden of proof rule as follows:
When a trial court has made a considered decree of permanent custody the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.[11]
Thus, when a party seeks to change custody rendered in a considered decree, the proponent of change must not only show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody, but he or she must also meet the burden of proof set forth in Bergeron.[12],
Phillip asserts the court of appeal erred in finding he did not meet the burden of proof outlined in Bergeron. Phillip argues the court of appeal erroneously expanded the Bergeron test to require him to prove that the advantages of Matthew moving in with him were “clear and convincing.” Bergeron only requires the advantages substantially outweigh the perceived harm of relocation. He notes the trial court and the court of appeal essentially agreed that, under the circumstances presented in this case, there was no harm in relocating Matthew from Ruston to Winnsboro. Further, the court of appeal did not deny the advantages for Matthew in Phillip’s home, namely the significant connections Matthew had with friends, family and activities, combined with a more structured and traditional environment and schedule.
Phillip also suggests that if the instant case does not warrant a change in custody under the alternate ground in Bergeron, then no such case exists. He submits that in a case where both parents love the child, but the best interest of the child |i2would be served by a modification of custody, without any harm to the child, application of Bergeron’s alternative ground is necessary. Phillip asserts the court of appeal’s ruling effectively limits Bergeron’s, intended application.
Vicki first argues the trial court’s finding that a material change in circumstance had occurred since the rendition of the 2004 custody decree was an abuse of discretion. Although she was working night shifts at the time the request for modification was filed, her testimony at trial established she was returning to a regular forty-hour work week. Thus, her employment schedule should not be an issue.
Further, while Matthew’s age and preference should be given consideration, it should not be a reason for a change of circumstances under the facts of this case. Vicki suggests that Phillip influenced Matthew prior to trial. Vicki further asserts *366 that Matthew’s weekends at his father’s house were his “lazy time,” as it consisted of weekends, holidays and summers without the pressure, stress and strains required by the routine of everyday life.
Vicki also asserts that Matthew’s school performance is not a material change in circumstance. She argues that Matthew’s poor school performance has to be considered in light of the facts and circumstances of this case. Matthew testified that eighth grade was harder for him, and the trial court also did not consider the impact Matthew’s health may have had on his school performance. She also notes Phillip had very little involvement in Matthew’s school activities in the past, never attending a parent/teacher conference, and only attending one football game to see Matthew perform in the band. Further, the trial court did not consider the impact of the trial itself on Matthew’s school performance. Vicki asserts the stress of the custody trial placed great strain on Matthew’s mental, physical, and emotional health, and this stress coincided with his poor performance in the eighth grade.
11sVicki contends Phillip failed to meet the Bergeron standard of proving by clear and convincing evidence that a change in custody would provide substantial advantages to Matthew. The advantages alleged by the trial court were not demonstrated by clear and convincing evidence, as the trial court had to “read between the lines” of Matthew’s testimony to make its decision. She argues this case does not fit the “narrow class” discussed in Bergeron. Here, the only advantages the trial court could offer was that Matthew would go to a new school, and already had family and friends in Winnsboro. She notes that Matthew has the same advantages with her in Ruston. The trial court also did not address the harm associated with Matthew’s health because of his father’s lack of interest therein. The possibility that Matthew might improve his grades at a new school in Winnsboro does not outweigh the potential harm of his medical issues being ignored by his father.
At the outset, we agree with the trial court’s finding that a material change in circumstances has occurred since 2004. It is clear from the record that the dynamics of both households have changed since the previous custody order. Matthew’s age, Vicki’s change of employment and work schedule, Phillip’s change in home environment and Matthew’s academic performance are all changes that materially affect Matthew’s welfare. Thus, we move on to consider whether the burden of proof of Bergeron was met. In the instant case, the lower courts found, and the parties agree, that the present custody decree is not deleterious to Matthew. Therefore, the narrow issue presented in this case is whether Phillip proved by clear and convincing evidence that the harm likely to be caused by a change of custody naming him as domiciliary parent is substantially outweighed by its advantages to Matthew.
After reviewing the record and considering the briefs and arguments of the parties, we find the court of appeal erred in reversing the trial court’s ruling. We find | 14no sufficient basis in the record to conclude the trial court’s findings were manifestly erroneous. In In re A.J.F., this court stressed the importance of deference to the trial court’s factual findings:
After reviewing those reasons in light of A.E.’s burden of proof under LA. CHILD. CODE art. 1138, it is clear to us that the appellate court disagreed with many of the conclusions and inferences that the juvenile court drew from the facts and substituted its opinion for that of the juvenile court. In manifest error review, it is important that the appellate court not substitute its opinion *367 when it is the juvenile court who is in the unique position to see and hear the witnesses as they testify. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record, [internal citations omitted; emphasis added][13]
In this case, the trial court had the benefit of seeing the parties and witnesses and hearing their testimony. After hearing the evidence, the trial court concluded there were substantial advantages to Matthew with a change in custody. While the court of appeal disputes some of the inferences made by the trial court, the court of appeal did not point to any evidence which demonstrates the trial court’s findings are clearly wrong.
Vicki argues Matthew could be harmed by a change in custody because Phillip will ignore his medical problems. However, nothing in the trial court’s reasons for judgment indicate the court had any concerns that Phillip would neglect Matthew’s medical issues. Rather, the trial court apparently rejected Vicki’s assertion that Phillip did not participate in Matthew’s medical care, and failed to monitor his insulin needs and dietary restrictions. The court noted Phillip’s testimony that he offered Matthew a balanced diet, but Matthew is primarily in charge of monitoring his insulin pump and adjusting his own medication. Considering Matthew’s age, it is not unreasonable for Phillip to allow him to assume some role in his own medical care. Additionally, Matthew has been in Phillip’s care every other weekend, one-half of the major [ ^holidays, and most of the summers for the past nine years. There is no evidence his medical condition has deteriorated while he was in Phillip’s custody.
Vicki also argues Phillip has not participated in Matthew’s schooling or extra-curricular activities in the past. However, the trial court made a finding that granting custody to Phillip provided Matthew with the best chance to thrive and succeed in all areas of his adolescent life. The trial court further made a finding that “Phillip has proven to be a very capable father and husband who provides his family with a stable, loving home environment.” Thus, despite his past actions, Phillip is now ready to assume a greater role in his son’s life.
Additionally, Vicki suggests Phillip did not meet his burden by clear and convincing evidence because the trial court indicated it had to “read between the lines” to reach its decision. While the trial court stated it was “reading between the lines” to reach its conclusion, this is precisely why deference is given to the trial court’s judgment. The trial court clearly observed certain nuances in Matthew’s testimony which cannot be communicated by the record, but which convinced the court of Matthew’s strong preference to live with his father and convinced the court a modification in custody would be in Matthew’s best interest.
Every child custody case must be viewed based on its own particular facts and relationships involved, with the goal of determining what is in the best interest of the child. Our decision in Bergeron was not meant to tie the hands of a court when the facts and circumstances of a case and the needs of a child necessitate a change in custody. The record reveals that both parents love Matthew and have raised him well. The record further demonstrates that Matthew is a well-adjusted, appropriately mature teenager who has expressed *368 a desire to live with his father and finish his high school years in Winnsboro. In determining the best interest of the child, a court is permitted |1fito consider the child’s custodial preference, if the court deems the child to be of sufficient age to express a preference.[14] Matthew was fourteen years old at the time of trial, and the trial court found him to be a mature and grounded teenager, and was “impressed with Matthew’s ability to communicate his sincere desire to live with his father the next four years before he reaches the age of majority.” After reviewing the record, we find no error in the weight the trial court placed on Matthew’s preference to live with his father. The record clearly shows that although Matthew loves his mother, and has a good relationship with her and his stepfather, he yearns for the family structure and interaction provided in his father’s household. The record reveals that Matthew spends a lot of time alone at Vicki’s house, where the family does not participate in many activities together. Matthew’s preference to live with Phillip is based in large part on the routine, structure, family connection and interaction in his father’s household. We find in this case, where the parents are relatively equally balanced in terms of caring for the child, the preference of a mature and grounded teenager such as Matthew is entitled to great weight. In this case, we find Matthew is entitled to live in an environment which supports his desire for a family life while he is still a minor. We see no error in the trial court’s finding that Phillip is the parent “whose home environment can provide him with the greatest opportunity to thrive and succeed scholastically, spiritually, socially, emotionally and physically during this very important stage of his adolescent life, as he prepares for manhood.”
Further, the court of appeal cannot simply substitute its own findings for that of the trial court. The determination of the trial court in child custody matters is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse.[15] The trial court thoughtfully considered all of |17the trial testimony and evidence and set forth in great detail the reasons why a change in custody was justified and in Matthew’s best interest. Given Matthew’s age and demonstrated level of maturity, and considering the particular facts and circumstances of this case, we find the record supports the trial court’s finding that Phillip has met the burden of Berger-on by proving that any harm caused by a modification of the 2004 custody decree would be substantially outweighed by its advantages to Matthew.
CONCLUSION
For the above reasons, we find the court of appeal erred in reversing the trial court’s modification of custody. Phillip met the burden of Bergeron by proving that any harm caused by a modification of the 2004 custody decree would be substantially outweighed by its advantages to Matthew. Thus, we find no error in the trial court’s ruling modifying the 2004 custody decree.
DECREE
REVERSED. RULING OF THE TRIAL COURT REINSTATED.
WEIMER, Justice, dissents and assigns reasons.

. 492 So.2d 1193 (La. 1986).

. We note Matthew is currently fifteen years old.

. Mulkey v. Mulkey, 47,748 (La.App. 2 Cir. 11/14/12), 108 So.3d 116.

. Mulkey v. Mulkey, 12-2709 (La.12/21/12), 108 So.3d 757.

. La. C.C. art. 131 provides that "[i]n a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.”

. Gray v. Gray, 11-548 (La.7/1/11), 65 So.3d 1247, 1258.

. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731, 738.

. Gray, 65 So.3d at 1259; AEB v. JBE, 99-2668 (La.11/30/99), 752 So.2d 756, 761.

. Bergeron, 492 So.2d at 1199.

. Id. (citing Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971)).

. Id. at 1200.

. Gray, 65 So.3d at 1258; AEB, 752 So.2d at 761.

. 00-0948 (La.6/30/00), 764 So.2d 47, 62.

. See La. C.C. art. 134(9).

. Gray, 65 So.3d at 1259.