# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 22-105

**TRISH R. VERONIE**

**VERSUS**

**JOSEPH VICTOR VAN BROCKLIN MIRELES**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 20183897
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**CHIEF JUDGE**
\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Jonathan W. Perry and Sharon Darville Wilson, Judges.

**AFFIRMED.**

**Paula Bertuccini**
**Bertuccini Law Firm**
**225 West Main Street**
**Lafayette, LA 70501**
**(337) 456-2777**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Joseph Victor Van Brocklin Mireles**

**William A. Keaty, II**
**Keaty & Tilly, LLC**
**2701 Johnston Street, Suite 307**
**Lafayette, LA 70503**
**(337) 347-8995**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Trish R. Veronie**

**COOKS, Chief Judge.**

Joseph Van Brocklin Mireles and Trish Veronie were married on May 9, 2015, in the State of Louisiana. Shortly after the marriage the couple moved to Ohio as a result of a change in Joe's employment. In the summer of 2016, while residing in Ohio, Trish became pregnant. There was a dispute between the parties as to Joe's reaction to this news. Joe did acknowledge he told Trish that he "did not think it was a good idea to bring a child into a marriage with issues." However, Trish maintained she was told by Joe that she could either have an abortion or put the baby up for adoption.

The couple did agree to relocate back to Louisiana, where Trish could be closer to her family. Joe was also working in Louisiana again for Acadian Ambulance as a helicopter pilot. Joe had begun a schedule where he was working seven days in Louisiana then seven days in Ohio. Joe maintained this schedule until April of 2018. In July of 2016, Trish and Joe's son from a prior relationship, Christian, who was thirteen, moved in with Trish's parents in Scott, Louisiana. Trish enrolled Christian in middle school in Scott and cared for him during this period. Joe was supposed to follow them to Louisiana shortly after the relocation, but never did. He had minimal to no contact with Christian during this period, despite working every other week in Louisiana, where he would stay in a hotel. On August 16, 2016, Joe's brother-in-law picked up Christian and took him back to Ohio. Joe maintained there was an incident where Trish ended up choking Christian, which was the reason he moved him out of Louisiana. Trish vehemently denied any such incident ever took place. Trish never saw Christian again.

On October 28, 2016, Joe filed a Petition for Divorce and Custody in Medina County, Ohio. The record established Joe began a relationship with another woman in Ohio, which he acknowledged in a text message to Trish, where he also told her not to call him and to refer any questions or concerns to his attorney. Trish gave

2

birth to a daughter, Olivia, on February 11, 2017. Trish did not list Joe as the Olivia's father on the birth certificate. Joe asserted he was not aware of the birth of Olivia until late February of 2017.

Approximately six weeks after Olivia's birth, Joe called to inquire about the child. Trish's mother initially hung up on him, but when he called back Trish, who later stated she was very angry about Joe's actions, told him she had given the baby up for adoption and hung up. A few days later, Joe was informed by Trish's mother that Olivia was fine and had not been given up for adoption. Although now aware that Olivia was at home with Trish, Joe did not ask to see Olivia, nor did he provide any financial support. Trish did ask him to assist in paying the OBGYN for the delivery and prenatal care, but Joe did not do so.

When Olivia was nearly one year old, it was discovered she had a congenital heart defect and would require open heart surgery. Trish called Joe to tell him about the surgery and, according to her, Joe was hostile over the phone about Trish allowing the doctors in Louisiana to perform the surgery. Eventually, Trish and her mother gave Joe the details about the place, time, and date of the surgery. The surgery was postponed and rescheduled on two different occasions, which Trish maintained she related to Joe. It was alleged by Joe that Trish intentionally gave him the wrong date and location of the surgery and "he was unable to be there to meet or support Olivia," who he still had never met in person.

During this period, Joe's Petition for Custody, filed on October 28, 2016 in Ohio was pending. The issue of custody was continued until the child was born and genetic testing could occur. On June 1, 2017, the Ohio court ruled that Ohio did not have jurisdiction over issues of custody. A Motion to Set Aside was filed by Joe, asking the Ohio court to find it did have jurisdiction over custody. On May 7, 2018, the Ohio court issued a decision awarding Joe sole custody of Olivia and also

3

granting his request for child support. It is unclear if the Ohio court was aware that Joe, to this point, had never met his fourteen-month-old daughter.

Trish was unaware of this development until she received a text message that Joe wanted her cooperation in transitioning Olivia to Ohio. Trish immediately filed an objection to the Magistrate's ruling in Ohio, arguing it lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act. While the matter was pending in Ohio, Trish filed a Petition to Establish Custody in the Fifteenth Judicial District Court in Lafayette Parish, Louisiana (hereafter 15th JDC) on June 20, 2018. Joe responded and filed Exceptions of Lis Pendens and Lack of Subject Matter Jurisdiction. The exception was sustained, and the 15th JDC deferred to the Ohio court to determine subject matter jurisdiction. On May 31, 2019, the Ohio court ruled it had jurisdiction and reinstated the Magistrate's judgment of sole custody in favor of Joe. Trish filed an immediate appeal to that ruling.

Following the Ohio ruling, Joe filed a Petition for Expedited Enforcement of Child Custody Determination in the 15th JDC seeking to enforce the Ohio ruling. Joe, for the first time, met Olivia in his attorney's office on November 1, 2019. The 15th JDC recognized the Ohio judgment as a valid judgment and ordered Olivia to be placed in Joe's custody. Olivia then was relocated to Ohio with Joe. Trish was allocated one weekend per month of visitation and three phone calls per week.

On May 26, 2020, the Ninth Judicial District Court of Appeals in Ohio reversed the lower Ohio court ruling and held that Louisiana was the home state of Olivia. Immediately, Trish filed a motion in the 15th JDC to reset the issue of custody. On June 20, 2020, a hearing officer conference was held, and it was recommended that the parties be granted joint custody, with Trish designated as the domiciliary parent. Joe was to be granted a week of custody each month. Joe objected to the hearing officer's recommendation.

In advance of trial, the trial court, on its own motion, appointed Dr. John Simoneaux to perform an evaluation. Dr. Simoneaux ultimately recommended in his report that Joe be named domiciliary parent. Dr. Simoneaux apparently based this on his belief "that Joseph is more intelligent, importantly has longer vision, and is in a better position to be entrusted with the primary responsibility" regarding Olivia. In finding the facts of the case did not support Dr. Simoneaux's recommendation, the trial court noted that "most of the [information] provided to [Dr. Simoneaux]" was from Joe, including video and audio recordings taken by Joe. The district court found "the transmittal of this information directly by a party and not through counsel is a violation of 15th JDC local rules." The trial court also held it would not consider the "intelligence of any party as a determining factor when considering custody of a child, unless it is of such a state that one could absolutely not raise a child. No evidence has been presented in this case to demonstrate such a fact." The trial court then went on to evaluate the best interest of Olivia based on an analysis of the factors set forth in La.Civ.Code art. 134. The trial court concluded those "factors support a finding that Trish should be named the domiciliary parent of Olivia." The trial court also prohibited the parties from recording or intercepting communications between Olivia and the other parent. This appeal followed, wherein Joe asserts the following assignments of error:

1. The trial court erred in excluding the written report of Dr. Aurich from the evidence at trial;

2. The trial court applied the wrong standard in its determination of custody, or in the alternative, abused its discretion in unreasonably refusing to take into consideration the intellectual capabilities of the parties as a factor in its determination of what was in the best interest of the child under the totality of the circumstances;

3. The trial court had no legal authority to order the parties to refrain from otherwise lawful activity, namely the recording or interception of communications whereby the child is a party to the communication and such recording or interception is in the best interest of the child.

5

**ANALYSIS**

The goal of every child custody case is to determine what is in the best interest of the child, with each case viewed on its own particular facts and circumstances. *Mulkey v. Mulkey*, 12-2709 (La. 5/7/13), 118 So.3d 357. Appellate courts will not disturb an award of custody absent a manifest abuse of discretion in the trial court. In *Bergeron v. Bergeron*, 492 So.2d 1193, 1196 (La.1986), the Louisiana Supreme Court described the appellate review standard by stating that "upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review in the absence of a clear showing of abuse."

## I.    *Exclusion of Dr. Aurich's Report.*

To assist in his evaluation of Trish, Dr. Simoneaux requested that Trish see a neuropsychologist, Dr. Lynn Aurich. Dr. Simoneaux then referred to the findings in Dr. Aurich's report in his deposition testimony. Counsel for Trish then filed a Motion in Limine, as an attachment to Dr. Simoneaux's deposition, objecting to the admissibility of Dr. Aurich's report. There was also an objection filed in open court during trial when counsel for Joe attempted to introduce it. Joe maintains the trial court erred in excluding the introduction of Dr. Aurich's report,

As Joe acknowledges, the general rule in Louisiana is that reports prepared by experts are inadmissible as hearsay. *See* La. Code Evid. art. 801(c). Joe argues there is an exception recognized where a court-appointed expert's report may be admissible if the expert was available for cross examination. However, in this case, Dr. Aurich was not appointed by the trial court. Dr. Simoneaux requested Dr. Aurich examine Trish to assist in his evaluation of Trish. Dr. Simoneaux then supplemented his report with Dr. Aurich's opinions. Thus, under the law, Dr. Aurich's report was hearsay, and was properly excluded by the trial court.

Joe also argues the report should be admissible because Trish did not object to Dr. Simoneaux's referencing Dr. Aurich's report at his depositions. As noted above, the record establishes counsel for Trish objected twice to the admissibility of Dr. Aurtich's report, first in a Motion in Limine, as an attachment to Dr. Simoneaux's deposition, and in open court during the trial when counsel for Joe attempted to introduce the report. Joe argues that the Motion in Limine was too late to object to hearsay evidence because an objection should have been made at the deposition where Dr. Aurich's report was discussed. However, as counsel for Trish points out, the parties stipulated at the deposition that "Per Article 1443(D) of the Louisiana Code of Civil Procedure, counsel for all parties reserve all objections until trial or other use of the deposition." Therefore, counsel for Trish properly objected to Dr. Aurich's hearsay testimony in the Motion for Limine attached to the deposition and in open court at trial. This assignment of error is without merit.

## II. *Naming of Trish as Domiciliary Parent.*

In his second assignment of error, Joe alleges the trial court abused its discretion in naming Trish as the domiciliary parent. Louisiana Civil Code Article 131 states, in pertinent part, that "the court shall award custody of a child in accordance with the best interest of the child." The best interest of the child is always the paramount consideration in determining child custody. *Boudreaux v. Boudreaux*, 95-310 (La.App. 3 Cir. 5/31/95), 657 So.2d 459, *writ denied*, 95-1674 (La. 10/27/95), 661 So.2d 1344. The factors used to determine the best interest of the child in custody matters are outlined in La.Civ.Code art. 134(A). In this case, the trial court issued lengthy written reasons for judgment going through each of the Article 134(A) factors as it pertained to Trish and Joe. The "La.Civ.Code art. 134 factors are nonexclusive and the weight given to each factor is left up to the discretion of the trial court. La.Civ.Code art. 134, Comment (b)." *Long v. Dossett*,

98-1160, p. 4 (La.App. 3 Cir. 4/28/99), 732 So.2d 773, 776, *writ denied*, 99-1377 (La. 6/4/99), 745 So.2d 13.

Joe has focused on Trish's alleged intellectual capability as a reason the trial court abused its discretion in naming Trish as domiciliary parent. The trial court addressed this allegation at several places in its reasons, specifically stating it "does not find this alleged intellectual deficiency to be concerning. Trish has demonstrated an ability to solely care for Olivia for the majority of her life." We note Joe seemingly had no concerns over Trish's intellectual capacity when he entrusted the care of his teenage son Christian to her, nor when he was absent from Olivia's life for nearly the first three years of her life. The argument that Trish is not intellectually capable of caring for Olivia is wholly without merit.

Our review of the Reasons for Ruling shows the trial court underwent a proper analysis of the best interests of the child utilizing the Article 134(A) factors. He discussed all fourteen of the factors listed and determined it was in the best interest of Olivia that Trish be named domiciliary parent. We find no abuse of the trial court's vast discretion in making this determination.

### III. *Order to Refrain from Recording Communications.*

The trial court in its Reasons for Ruling, decreed that the party who has physical custody of Olivia at the time shall allow audio visual communication (Zoom, Facetime, etc.) with the other parent. The trial court further held this period of visitation "shall not be recorded by either parent unless permission is granted by this court." In his final assignment of error, Joe argues the trial court lacks the authority to order him not to record communications between himself and Olivia or Trish. He bases this argument on the fact that such a recording would not be considered wiretapping as defined by statute, and thus a legal action.

As Trish notes, the courts have regularly upheld custody provisions that prohibit otherwise legal activity, such as having overnight guests of the opposite sex,

8

drinking alcoholic beverages and/or prescription drugs while exercising custody over the child and discussing current and pending legal proceedings in the presence of the child. The courts of this state have consistently found the interest of the child to be paramount over that of the parent. *State ex rel. G.J.L.*, 00-3278 (La. 6/29/01), 791 So.2d 80; *In re J.A.*, 99-2905 (La. 1/12/00), 752 So.2d 806. The trial court found it was in the best interest of Olivia to restrict the recording of communications and we will not disturb that finding herein.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant, Joseph Victor Van Brocklin Mireles.

**AFFIRMED.**