Judgment rendered June 29, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,559-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

NICHOLAS WILLIAM                          Plaintiff-Appellee
HODGKIN

versus

WHITNEY L. HODGKIN                        Defendant-Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 159808

Honorable Robert Lane Pittard, Judge

* * * * *

KAMMER & HUCKABAY, LTD (A.P.L.C.)        Counsel for Appellant
By:  Charles H. Kammer, III

MARK J. MICIOTTO                          Counsel for Appellee

* * * * *

Before STONE, COX, and HUNTER, JJ.

**STONE, J.**

## FACTS AND PROCEDURAL HISTORY

This child custody case arises from the 26th Judicial District Court, the Honorable Lane Pittard presiding. The parties are Nicholas Hodgkin ("Nicholas") and Whitney Hodgkin ("Whitney"); they are ex-spouses and the parents of the minor child in this case. The child was born in 2016 and is diagnosed with autism. Whitney, the appellant, is currently the non-domiciliary parent pursuant to a considered joint custody decree that was rendered on July 2, 2020, and signed on August 20, 2020. Whitney was awarded physical custody from July 2, 2020, to August 1, 2020. The joint custody implementation plan ("JCIP") specifies that the child shall live with Nicholas[1] – the domiciliary parent – during the school year and with Whitney during the summer, fall, and spring breaks.[2] It also provides that both parties shall have weekend visitation rights while the child is in the physical custody of the other parent, provided that the visiting parent gives at least one-week advance notice.

On June 16, 2021, Whitney filed a rule to modify custody, and on September 29, 2021, she filed a supplemental rule to modify custody. In response, Nicholas filed an exception of no cause of action, which the trial court granted, finding that Whitney's allegations, even if proven, would not satisfy the *Bergeron* standard for modifying a considered custody decree. Whitney now appeals, arguing that the trial court erred in granting the exception of no cause of action.

_____

[1] Mr. Hodgkin is a member of the Air Force.
[2] The parties alternate custody for the Thanksgiving and Christmas holidays.

## WHITNEY'S ALLEGATIONS

In her original rule to modify custody, Whitney alleges that, since the considered custody decree, the Air Force has re-stationed Nicholas from Barksdale Air Force Base ("AFB") in Bossier City to Hill AFB in Utah. She points out that this has required the autistic child to start over at a new school and begin treatment with a new therapist. Whitney further alleges that Nicholas interfered with her efforts to communicate with the child through video chat and phone calls and deprived her of her custodial time under the JCIP.

Whitney avers three instances wherein Nicholas deprived her of physical custody or visitation:

- Nicholas refused to allow Whitney to have physical custody of the child while he was away from home for a month for Air Force training. She alleges that Nicholas left for this training approximately one month after the July 2, 2020, oral joint custody decree.

- Nicholas failed to inform Whitney that the child's start date for the 2020-2021 school year had moved back from August 12, 2020, to September 3, 2020, and that she should have been allowed physical custody until September 3, 2020.

- When Whitney notified Nicholas on August 24, 2020, that she would be in Bossier City to exercise her visitation rights on September 5 and 6, 2020, he refused to let her visit the child because her 14-day quarantine would not be completed.

Additionally, Whitney avers the following instances wherein Nicholas denied her the right to speak with the child:

- August 6, 2020: Nicholas sent a message to Whitney stating that his (new) wife had a headache and did not want to do the video chat that day.

- August 9, 2020: Nicholas' wife did not answer Whitney's Skype call because she was logged out of their Skype account and was not aware of the appellant's call.

- August 13, 2020: Nicholas informed Whitney that he did not want to do the Skype call because there had been a death in the family and his family members wanted to video chat during the same time that the appellant wanted to video chat with the child.

- August 16, 2020: Whitney called to speak with the child at 7:27 PM and got no answer; Nicholas stated that was because the child was already asleep.

In September of 2021, Whitney filed a supplemental rule to modify custody. The remainder of this paragraph summarizes the allegations therein. Subsequent to the original rule to modify custody, Nicholas physically separated from his new wife, who initially was the primary caretaker for the minor child after the considered decree. Two months after his wife left, Nicholas moved his new girlfriend and her three children into his residence with the minor child. Afterward, Nicholas received orders that he would deploy for six months beginning in November of 2021. Additionally, the child has only been receiving 30 minutes per month of occupational therapy and 45 minutes per week of speech therapy while living in Nicholas' home. Whitney made 24 phone calls attempting to speak with the child, and Nicholas only allowed 13 of them. Nicholas offered various reasons for denying her attempt to speak with the child; the particulars alleged are ambiguous: "the child was speaking to a different family member instead, he was cleaning, the phone was downstairs or he was cooking."[3]

## DISCUSSION

The Louisiana Supreme Court, *in Bergeron v. Bergeron*, 492 So. 2d 1193, 1200 (La. 1986), established what must be proven in order to modify a considered permanent custody decree: (1) the occurrence of a change of circumstances materially affecting the welfare of the child since the

---

[3] It is not totally clear whether "he" refers to Mr. Hodgkin or the child.

considered decree; and (2)(i) the continuation of the present custody arrangement would be so deleterious to the child as to justify a modification of the custody decree, and/or (ii) the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. The burden of proof is clear and convincing evidence. *Id.* The Louisiana Supreme court reaffirmed these principles in *Mulkey v. Mulkey*, 12-2709 (La. 5/7/13), 118 So. 3d 357.

In *Jackson v. City of New Orleans,* 12-2742 (La. 1/28/14), 144 So. 3d 876, 895, the Louisiana Supreme Court explained:

> The peremptory exception of no cause of action is designed to test the legal sufficiency of a petition by determining whether a party is afforded a remedy in law based on the facts alleged in the pleading. All well-pleaded allegations of fact are accepted as true and correct, and all doubts are resolved in favor of sufficiency of the petition so as to afford litigants their day in court. The burden of demonstrating that a petition fails to state a cause of action is upon the mover. The sufficiency of a petition subject to an exception of no cause of action is a question of law, and a de novo standard is applied to the review of legal questions; this court renders a judgment based on the record without deference to the legal conclusions of the lower courts.

Louisiana has a "fact pleading" system, as opposed to the federal "notice pleading" system. La. C.C.P. art. 854, cmt. (a). To state a cause of action in a Louisiana court, a petition must allege the material facts constituting the cause of action. *Id.*

A reasonable factfinder could easily conclude that the appellant's allegations, if proven, would satisfy the requirements of *Bergeron, supra,* and *Mulkey, supra.* After the rendition of the considered decree, Nicholas allegedly was re-stationed to Utah, then separated from his new wife, who was the child's primary caretaker. Only a few months after separation from

his new wife, Nicholas allegedly moved his new girlfriend and her three children into his residence with the minor child. Furthermore, after assuring the trial court he would not be deployed, Nicholas received orders that he would be deployed for six months. These facts, if proven, would support a finding that a material change in circumstances affecting the welfare of the child occurred after the considered decree. The first prong of *Bergeron*, *supra*, is satisfied.

The second prong of *Bergeron*, *supra*, can be satisfied by either or both of two tests. As explained below, both of these tests are met by Whitney's allegations. These facts alleged would support a finding that continuation of the present custody situation is sufficiently deleterious to the child to justify modification of the considered decree. Because the considered decree designates Nicholas as the domiciliary parent: (1) the child has been moved from Bossier City, Louisiana, to Hill AFB in Utah, and may be relocated again in the future; (2) the child had to rely on Nicholas' new wife as his primary caretaker, and now she has been removed from the child's life; and (3) the child is forced to share a home with his father's new girlfriend and her three children; furthermore, it can be reasonably inferred that the new girlfriend may succeed Nicholas' estranged wife in the role of primary caretaker; and (4) the father's deployment will require the child to withdraw from school and therapy in Utah (or wherever else the father may be stationed) and go live with his mother for the duration of the deployment. A factfinder could reasonably conclude that the discontinuity and instability the child has already experienced in his father's custody, coupled with the risk of further such problems in the future, is

sufficiently deleterious to this child to justify granting the proposed change of custody.

Likewise, if proven, these facts could suffice as clear and convincing proof that granting the proposed custody change would not harm the child's welfare at all, but instead, would constitute a substantial benefit to him.

## CONCLUSION

The judgment of the trial court is **REVERSED**. All costs of this appeal are assessed to Appellee, Nicholas Hodgkin.