| | | |
|---|---|---|
| **IN RE: L.T.D., L.M.D.**[1] | * | **NO. 2025-CA-0831** |
| | * | |
| | | **COURT OF APPEAL** |
| | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

CONSOLIDATED WITH:    CONSOLIDATED WITH:

IAN BERRIE & TWANNA HILL IN   NO. 2025-CA-0832
RE L.T.D./L.M.D.

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-05708, DIVISION "K-2"
Honorable Bernadette D'Souza, Judge

\* \* \* \* \* \*

**Judge Joy Cossich Lobrano**

\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Tiffany Gautier Chase, Judge Monique G. Morial)

***CHASE, J., CONCURS IN THE RESULT***

Michael J. Hall
Law Office of Michael J. Hall, L.L.C.
2401 Westbend Pkwy, Suite 2102
New Orleans, LA 70114

   COUNSEL FOR APPELLANT, VERONICA JAMES

Halima Narcisse McKenna
THE MCKENNA FIRM, LLC
1100 Poydras Street, Suite 2900
New Orleans, LA 70163

   COUNSEL FOR APPELLEES, IAN BERRIE AND TWANNA HILL

             **AFFIRMED**

             **MARCH 31, 2026**

---

[1] In this opinion, we use the minor children's initials, rather than their full names, to protect their privacy. *See* Uniform Rules, Courts of Appeal, Rules 5-1 and 5-2.

This is a child custody case. Appellant, Veronica James ("Veronica"), seeks review of the district court's September 22, 2025 judgment which awarded sole custody of the minor children, L.T.D. and L.M.D., to Appellees, Ian Berrie ("Ian") and Twanna Hill ("Twanna"). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

L.T.D. and L.M.D. ("Children"), who are identical twins, were born on February 14, 2024. Their parents, Leigha Dixon ("Mother"), and James Cordier, IV ("Father"), who were never married, terminated their relationship several months prior to the birth of Children. Father's name was not listed on Children's birth certificates.

After the birth of Children, Mother and Children temporarily lived with Mother's paternal aunt, Veronica, while recovering from postpartum medical complications. During this time, Veronica and her daughter assisted Mother with caring for Children. Mother passed away on June 15, 2024, leaving no will designating who would receive tutorship of Children. Upon Mother's passing, Veronica began caring for Children.

On June 21, 2024, Veronica filed a petition to establish custody requesting sole custody of Children. On June 27, 2024, Mother's half-brother, Ian, and his wife, Twanna, who reside in Greenville, North Carolina, filed a petition seeking sole custody of Children. The two actions were subsequently consolidated.

On November 1, 2024, Ian filed a Motion to Set Status Conference to establish pre-trial cut-off dates and to select a trial date, and on November 4, 2024, he filed an *Ex Parte* Motion for Video Conference Visits requesting two videoconferencing visits per week with Children pending trial of the matter. The Motion for Video Conference Visits was set for a contradictory hearing on November 19, 2024, and a status conference was set on the same date. On November 19, 2024, the parties entered into a consent judgment allowing Ian to have video conferences with Children on Monday and Wednesday evenings pending trial, and trial was set on January 24, 2025.

Trial did not commence on January 24, 2025, due to court closure caused by a snowstorm and was subsequently reset for May 19, 2025. Father testified at trial on May 19, 2025. During his testimony, he stated that he executed an act of acknowledgement on January 17, 2025, formally acknowledging his paternity of Children, and the Act of Acknowledgment was introduced into evidence. The court continued the trial and ordered that Father and Children submit to DNA testing to determine if he was the biological father of Children. The results, which were submitted to the court on June 30, 2025, confirmed that Father is the biological father of Children. On July 8, 2025, Ian and Twanna filed a supplemental and amending petition adding Father as a defendant to their custody petition. They also filed a motion to amend the caption of the custody suit instituted by Veronica to include Father as a party-defendant, which the district court granted.

2

Trial resumed on September 19, 2025. At the conclusion of the trial, the district court awarded Ian and Twanna sole custody of Children. The district court issued a signed judgment on September 22, 2025. This appeal timely follows.

## STANDARD OF REVIEW

Each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount consideration being the best interest of the child. *See* La. C.C. art. 131; *Mulkey v. Mulkey,* 12-2709, p. 15 (La. 5/7/13), 118 So.3d 357, 367. The trial court is in the best position to ascertain the best interest of the child under the unique circumstances of the particular case. Absent a legal error, a trial court's custody determination is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. *Thompson v. Thompson*, 532 So.2d 101 (La. 1988) (per curiam); *Mire v. Mire*, 98-1614, p. 3 (La. App. 4 Cir. 3/24/99), 734 So.2d 751, 753.

## ASSIGNMENTS OF ERROR

Veronica presents two assignments of error: (1) the district court erred in awarding sole custody of Children to Ian and Twanna; and (2) the district court erred in failing to consider the best interest of the child factors outlined in La. C.C. art. 134. Because both assignments of error concern the district court's custody determination and its application of the best interest of the child standard, we address them together.

## DISCUSSION

Veronica contends that the district court erred in awarding sole custody of Children to Ian and Twanna and, in doing so, failed to properly consider the best interest of the child factors set forth in La. C.C. art. 134. She further argues that the

3

district court failed to comply with La. C.C. art. 133 in awarding custody to non-parents.

The best interest of the child standard governs all child custody determinations. La. C.C. art. 131; *Mulkey*, 12-2709, p. 15, 118 So.3d at 367. Louisiana Civil Code Article 134 provides a non-exclusive list of factors to guide the court's determination of the child's best interest.[2] *Hodges v. Hodges*, 15-0585, p. 4 (La. 11/23/15), 181 So.3d 700, 703 ("The list of factors provided in Article 134 is nonexclusive[.]") (citing La. C.C. art. 134, Comment (b)). As noted in the comments to Article 134, "the factors are simply provided as a guide to the court in making the fundamental finding as to what disposition is in the best interest of the child." La. C.C. art. 134, comment (a). Because the factors are non-exclusive, the district court is not required to mechanically recite each factor or assign equal weight to each. Rather, it has discretion to determine which factors are most relevant and the weight to be given to each in light of the particular facts and circumstances of the case. *Hodges*, 15-0585, p. 4, 181 So.3d at 703 (noting that "the determination as to the weight to be given each factor is left to the discretion of the trial court") (citing La. C.C. art. 134, comment (b)); *State through Dep't of Child. & Fam. Servs. Child Support Enf't v. Knapp*, 16-0979, p. 28 (La. App. 4

---

[2] The factors include: (1) the potential for the child to be abused, which shall be of primary consideration; (2) the love, affection and other emotional ties between each party and the child; (3) the capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child; (4) the capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs; (5) the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment; (6) the permanence of the existing or proposed custodial home or homes; (7) the moral fitness of each party with regards to the welfare of the child; (8) the history of substance abuse, violence, or criminal activity of any party; (9) the mental and physical health of each party; (10) the home, school, and community history of the child; (11) the reasonable preference of the child, if the child is of sufficient age; (12) the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party; (13) the distance between the respective residences of the parties; and (14) the responsibility for the care and rearing of the child previously exercised by each party. La. C.C. art. 134(A)(1-14).

Cir. 4/12/17), 216 So.3d 130, 148 ("The court is not required to analyze mechanically all of the [enumerated] factors[.]") (citation omitted). However, the district court must nonetheless consider the best interest of the child in light of all relevant circumstances. *Hodges*, 15-0585, pp. 3-4, 181 So.3d at 703 ("As provided in La. C.C. art. 134, all relevant factors in determining the best interest of the child must be considered by the court; such factors *may* include: [factors listed].") (emphasis added). "The illustrative nature of the listing of factors contained in Article 134 gives the court freedom to consider additional factors; and, in general, the court should consider the totality of the facts and circumstances of the individual case." *Hodges*, 15-0585, p. 4, 181 So.3d at 703 (citing La. C.C. art. 134, comment (c)).

In cases involving a parent and a non-parent, La. C.C. art. 133 governs. Under Article 133, if an award of custody to a parent would result in substantial harm to the child, the court shall award custody to a non-parent who can provide an adequate and stable environment.[3]

In the case *sub judice*, Father testified that he was unable to care for Children and was not seeking custody. He further acknowledged a conviction for domestic abuse battery against Mother while she was pregnant with Children. The parties do not dispute that an award of custody to Father would result in substantial harm to Children. Accordingly, the district court properly proceeded under Article

_____

[3] La. C.C. art. 133 provides:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

133 to determine which non-parent could provide an adequate and stable environment.

Veronica argues that, because Children had been living with her since Mother's death, La. C.C. art. 133 required the district court to award custody to her as the person with whom Children had been living in a wholesome and stable environment. The record reflects, however, that the district court directly considered that issue and found Veronica had not established that she, as the sole proposed legal custodian, could provide the requisite wholesome and stable environment under Article 133. In reaching that conclusion, the district court relied not on the mere fact that Veronica received assistance from family members, nor on a rejection of her family's "village" caregiving structure, but on the evidence that the day-to-day caregiving arrangement depended substantially on non-parties who would have no legal custodial obligation to Children, together with concerns regarding Veronica's independently proven financial stability and her long-term ability to serve as sole custodian.

The district court also did not ignore the evidence favorable to Veronica, including testimony that Children were well cared for in her home and that she and her family had played a substantial role in their upbringing since birth. Rather, the district court weighed that evidence against other evidence concerning permanence, legal responsibility, long-term stability, and the parents' expressed wishes, and concluded that Ian and Twanna could better provide an adequate and stable environment for the duration of Children's minority. Thus, the district court did not bypass the first inquiry required by Article 133, but instead found that Veronica did not satisfy it.

The district court first evaluated whether Veronica, with whom Children had been living since Mother's death, was providing a wholesome and stable environment. In doing so, the court considered the actual caregiving structure within the home, including testimony that Veronica's daughter and son-in-law functioned as primary caretakers despite not being parties to the proceeding. The court also considered Veronica's financial stability and the extent to which she relied on non-parties for support, noting that those individuals had no legal obligation to continue providing care or financial assistance. Additionally, the court evaluated Veronica's long-term ability to care for Children in light of her age and the duration of the children's minority.

The district court then considered the proposed custodial home of Ian and Twanna, including their financial stability, employment, experience raising children, ability to meet Children's medical needs, and the presence of an extended family support system. The court also considered the stability and permanence of their household, their community environment, and testimony regarding Mother's wishes and Father's support for their custody.

Although the district court did not expressly list each of the Article 134 factors, its reasons for judgment reflect that it considered numerous relevant factors bearing on Children's best interest. These include the capacity of each party to provide care and financial support, the stability and permanence of the proposed home environments, the prior caretaking exercised by the parties, and long-term ability to meet Children's needs. The district court also considered the availability of family support systems, the structure of the caregiving arrangements, and the practical and emotional stability offered by each household. Additionally, the court

7

considered other relevant circumstances, including the involvement of other non-parties in Veronica's household and the expressed wishes of Children's parents.

Based on these considerations, the district court determined that it was in the best interest of Children to grant custody to Ian and Twanna, finding that they could provide an adequate and stable environment for Children and that Veronica had not established that she could do so as the sole legal custodian. The record supports this determination.

Accordingly, we find no legal error in the district court's application of La. C.C. arts. 133 and 134, and no abuse of discretion in its custody award. Veronica's assignments of error lack merit.

## CONCLUSION

For the foregoing reasons, we affirm the district court's custody award.

**AFFIRMED**