# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2024 CU 0175

## BRITTANY NICOLE SHARP

## VERSUS

## JOSHUA MALONE JORDAN

Judgment Rendered: **SEP 2 0 2024**

* * * * *

On Appeal from the
21st Judicial District Court
Parish of Livingston, State of Louisiana
Trial Court No. 158415

The Honorable Jeffrey T. Oglesbee, Judge Presiding

* * * * *

| | |
|---|---|
| J. Garrison Jordan<br>Hammond, Louisiana | Attorney for Plaintiff-Appellee,<br>Brittany Nicole Sharp |
| Wendy L. Edwards<br>Baton Rouge, Louisiana | Attorney for Defendant-Appellant,<br>Joshua Malone Jordan |

* * * * *

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

**WOLFE, J.**

The father appeals from a trial court judgment maintaining joint custody of his minor child with the child's mother, but modifying a previously established physical custody arrangement, as well as denying the father's request for appointment of a parenting coordinator. We affirm.

## FACTS

On May 26, 2017, Brittany Nicole Sharp ("Sharp") gave birth to a minor child, N.B.J.[1] Though unmarried to Sharp at the time, Joshua Malone Jordan ("Jordan") signed the birth certificate, identifying himself as N.B.J.'s father. Nearly one year after N.B.J.'s birth, Sharp filed a Petition to Establish Custody, Child Support, and Visitation, requesting she and Jordan be granted joint custody, but that she be named as the domiciliary parent. However, the parties reached an amicable resolution, agreeing to joint custody of N.B.J., equally shared physical custody as co-domiciliary parents, and agreeing to implement various other provisions concerning holidays, expenses, schooling, etc. A Stipulated Judgment to this effect was signed on April 3, 2018.

On May 15, 2020, Sharp filed a Rule to Modify Custody, for Contempt of Court, and for *Ex Parte* Order, requesting a modification of N.B.J.'s physical custody to an alternating weekly schedule, a modification of the holiday custody schedule, a restraining order prohibiting the relocation of N.B.J. from Louisiana to Texas following Jordan's undergraduate graduation from LSU, as well as an order for penalties and attorney's fees for Jordan's alleged violation of the previous Stipulated Judgment. Therein, Sharp generally claimed Jordan refused to allow N.B.J. to leave his house, that N.B.J. needed more consistent time with her, and that she had otherwise been unable to see N.B.J. On October 21, 2020, Jordan responded

---

[1] Pursuant to Uniform Rules – Courts of Appeal, Rule 5-2, we refer to the minor child by his initials.

by filing an Answer and Reconventional Demand in which he requested to be named the domiciliary parent and that physical custody be awarded to Sharp on an alternating weekly basis. Jordan claimed Sharp was mentally unstable, repeatedly forfeited her right of physical custody with N.B.J., and was financially incapable of caring for the child. Later, on December 7, 2020, Jordan filed a Motion for Permission to Relocate with Minor Child due to his undergraduate graduation with a mechanical engineering degree and a job offer in Beaumont, Texas, as well as a Motion for Sanctions against Sharp, claiming her allegations as set forth in the May 15, 2020 Rule were knowingly false.

A two-day trial was held on May 19-20, 2022. Following trial, the trial court orally considered the relocation factors set forth in Louisiana Revised Statutes 9:355.14, as well as the "best interest" factors set forth in Louisiana Civil Code article 134. The trial court then denied Jordan's request to relocate N.B.J. Further, because the child was soon entering kindergarten, and "[d]ue to the fact that geographically the week to week custodial schedule [was] not feasible any longer," the trial court modified the physical custody schedule. On July 11, 2022, the trial court signed a judgment reflecting its ruling, as well as the modified physical custody schedule, which provided that Sharp and Jordan were awarded joint custody, with Sharp named as the domiciliary parent; that N.B.J. was to primarily reside with Sharp and that Jordan would have physical custody of N.B.J. every other weekend in Livingston or East Baton Rouge Parishes during the school year; that Jordan would generally be granted physical custody of N.B.J. for all three-day weekends during the school months, which could be exercised at his home in Texas; that Jordan would have physical custody of N.B.J. for three consecutive weeks in both June and July; and that Jordan would have physical custody of N.B.J. during Mardi Gras holidays, Easter/Spring Break holidays, and Thanksgiving holidays, with Christmas holidays being split between Jordan and Sharp.

After signing the July 11, 2022 judgment, Jordan timely filed a Motion and Order for New Trial requesting, in part, that the trial court grant a new trial because "relevant circumstances have changed that render [the trial court's] July 11, 2022 'Judgment' contrary to the best interest of the minor child." In his motion, Jordan stated that his employer modified his employment arrangement, allowing him to work remotely, such that he intended to move back to Baton Rouge, Louisiana. As such, Jordan sought *another* modification of the physical custody arrangement, requesting a return to the April 3, 2018 stipulated agreement of alternating weeks of physical custody. On October 19, 2022, the trial court orally granted Jordan's request for a new trial.[2] In the subsequently signed judgment, dated November 30, 2022, the trial court ruled "that a new trial is ordered to be held to take limited testimony and evidence to determine whether a new physical custodial schedule should be confected reflecting the fact that [Jordan] now lives in the State of Louisiana." The trial court further denied Jordan's request to hold the July 11, 2022 Judgment in abeyance, stating it would remain in "full force and effect" until a new trial would be held. Following this ruling, Sharp sought supervisory review with this court, which was denied on January 17, 2023. **Sharp v. Jordan,** 2022-1229 (La. App. 1st Cir. 1/17/23), 2023 WL 212557 (unpublished writ action), writ denied, 2023-00235 (La. 3/28/23), 358 So.3d 505.[3]

A new trial was held on September 11, 2023, with Jordan, Sharp, and Haley Jordan (Jordan's spouse) testifying. Additionally, therein, the May 2022 trial record was introduced. Following the presentation of evidence, the trial court, after orally analyzing the Article 134 factors, awarded joint custody to Sharp and Jordan, with Sharp designated as the domiciliary parent. The trial court also modified, again, the

---

[2] A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. La. Code Civ. P. art. 1973.

[3] Any issue concerning the procedural appropriateness of Jordan's filing of a motion for new trial is not assigned as error or otherwise before this court.

4

physical custody arrangement, allowing Jordan to have physical custody on the first, second, and fourth weekend of every month, the first and third full weeks of June and July, and with holidays split with Sharp on an alternating yearly schedule. Additionally, the trial court denied Jordan's request for appointment of a parenting coordinator. A judgment to this effect was signed on September 26, 2023.

## DISCUSSION

On appeal, Jordan generally assigns error to the trial court's analysis and application of the child custody factors as set forth in La. Civ. Code art. 134, the trial court's failure to establish an equally-shared, weekly-alternating physical custody arrangement for N.B.J., the trial court's designation of Sharp as the domiciliary parent, and the failure of the trial court to assign a parenting coordinator.

Each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount goal of reaching a decision that is in the best interest of the child. See La. Civ. Code art. 131; **McCormic v. Rider**, 2009-2584 (La. 2/12/10), 27 So.3d 277, 279 (per curiam). It is the child's emotional, physical, material and social well-being and health that are the court's very purpose in child custody cases; the court must protect the child from the real possibility that the parents are engaged in a bitter, vengeful, and highly emotional conflict. **Hodges v. Hodges**, 2015-0585 (La. 11/23/15), 181 So.3d 700, 702; **Jenkins v. Jenkins**, 2023-0087 (La. App. 1st Cir. 6/2/23), 370 So.3d 61, 71-72.

The burden of proof applicable to a request to change legal or physical custody depends on whether the prior custody award was a considered decree, *i.e.*, an award of permanent custody made after the trial court received evidence of parental fitness to exercise care, custody, and control of the child. See **Mulkey v. Mulkey**, 2012-2709 (La. 5/7/13), 118 So.3d 357, 364; **Melton v. Johnson**, 2018-0403 (La. App. 1st Cir. 12/12/18), 2018 WL 6571044, *4. A parent seeking modification of a considered decree bears the heavy burden of proving that a change of circumstances

5

has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely caused by a change of environment is substantially outweighed by its advantages to the child. **Bergeron v. Bergeron**, 492 So.2d 1193, 1200 (La. 1986); **Elliott v. Elliott**, 2010-0755 (La. App. 1st Cir. 9/10/10), 49 So.3d 407, 412, writ denied, 2010-2260 (La. 10/27/10), 48 So.3d 1088. In contrast, a parent seeking modification of a non-considered decree need only prove that there has been a change in circumstances materially affecting the welfare of the child since the prior custody decree and that the proposed modification is in the best interest of the child. **Evans v. Lungrin**, 97-0541 (La. 2/6/98), 708 So.2d 731, 738; **Jenkins**, 370 So.3d at 72-73.

As noted above, the April 3, 2018 agreement reached between the parties concerning N.B.J.'s physical custody, as well as domiciliary parent status, was a stipulated judgment. Later, after the two-day trial held in May 2022, a considered decree was rendered by the trial court on July 11, 2022, as it received evidence concerning the parties' fitness to exercise care. Although Jordan thereafter filed a Motion and Order for New Trial, he ultimately sought a modification of the previously imposed considered decree, due to his moving back to Louisiana. As such, his "heavy" burden of proof during the subsequent September 11, 2023 new trial was under the **Bergeron** standard.

The trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. **Jenkins**, 370 So.3d at 74. The trial court's determination on child custody matters is entitled to great weight, and its discretion will not be disturbed on review in the absence of a clear showing of abuse. **Mulkey**, 118 So.3d at 368. In most child custody cases, the trial court's determination is based heavily on factual findings. **Jenkins**, 370 So.3d at 74. It is well-settled that an appellate court cannot set aside a trial court's findings of fact in the absence of

6

manifest error or unless those findings are clearly wrong. See **Kinnett v. Kinnett**, 2020-01134 (La. 12/10/21), 332 So.3d 1149, 1154. A court of appeal cannot simply substitute its own findings for that of the trial court. **Mulkey**, 118 So.3d at 368.

Absent a showing of good cause, the court shall render a joint custody implementation order when joint custody is decreed. See La. R.S. 9:335(A)(1). The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents. La. R.S. 9:335(A)(2)(a). To the extent it is feasible and in the best interest of the child, physical custody of the child should be shared equally. La. R.S. 9:335(A)(2)(b). We note further that it is well-settled that the focus should be on substantial time rather than strict equality of time. See **Harang v. Ponder**, 2009-2182 (La. App. 1st Cir. 3/26/10), 36 So.3d 954, 962, writ denied, 2010-0926 (La. 5/19/10), 36 So.3d 219. In a decree of joint custody, the court shall designate a domiciliary parent. La. R.S. 9:335(B)(1); see **Wolfe v. Hanson**, 2006-1434 (La. App. 1st Cir. 5/2/08), 991 So.2d 13, 17, writ denied, 2008-1205 (La. 6/27/08), 983 So.2d 1292.

Louisiana Civil Code article 134(A) directs courts to consider all relevant factors in determining the best interest of the child, including:

> (1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.
>
> (2) The love, affection, and other emotional ties between each party and the child.
>
> (3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> (5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

7

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

The weight to be given each factor is left to the discretion of the trial court. The trial court is not bound to make a mechanical evaluation of or provide a literal articulation of all of the factors and is not required to specifically explain its weighing and balancing of the factors. Rather, the trial court should decide each case on its own facts and circumstances in light of Article 134 and other relevant factors. See Couvillon v. Couvillon, 2023-0056 (La. App. 1st Cir. 8/29/23), 2023 WL 5542771, *3.

After a careful review of the record, we find the trial court sufficiently considered all relevant factors in making its determination that it is in N.B.J.'s best interest that Sharp be named domiciliary parent and that physical custody be shared between Sharp and Jordan based on the above-described schedule. The trial court noted that both Sharp and Jordan demonstrate love, and have affection for, N.B.J.,

8

that both are capable of providing N.B.J. with food, clothing, and basic material needs, and that neither parent is abusive towards N.B.J. Further, the trial court found no history of substance abuse by Sharp or Jordan, that the moral fitness of each parent appeared positive, there were no mental or physical health issues of either party such that it would be a significant issue for N.B.J., and that both parents demonstrated a willingness to encourage a close relationship between the minor child and the other parent. Particular factors the trial court found weighing in favor of Sharp were that, in the year prior to trial, N.B.J. primarily resided with Sharp, and was enrolled in school, in Livingston Parish. The trial court found N.B.J. has friends at school and is active in the local community parks. The trial court expressed concern about disrupting N.B.J.'s current schedule, which had been in place for more than one year. Further, concerning the ability of each parent to take N.B.J. to school, the trial court found that, although Jordan testified he would not have issue with making the thirty-to-forty-minute drive from his home in East Baton Rouge Parish to Livingston Parish, the trial court was concerned with unexpected traffic; in contrast, Sharp lives two minutes away from the school. Accordingly, while the record shows that Sharp and Jordan are capable and responsible parents of N.B.J., we cannot say the trial court abused its discretion in awarding joint custody to the parties and naming Sharp as the domiciliary parent.

Next, Jordan claims the trial court erred in ruling as inadmissible and irrelevant, evidence concerning Sharp's relationship with her own mother.[4] Jordan claims such testimony would be relevant as Sharp's mother resides with Sharp, is part of Sharp's "support system," and, "likely interacts with the minor child often, if not daily." Although Jordan cites to a few lines of questioning where the trial court admonished Jordan's counsel to be sure to establish the questioning's relevance, he

---

[4] We note that, although Jordan sought to introduce certain evidence concerning Sharp's mother during trial, Sharp's mother was never issued a subpoena to testify. All evidence Jordan sought to introduce came through other witness testimony.

cites to only one instance during trial in which the trial court expressly prohibited introduction of evidence, and it came during a line of questioning during Jordan's mother's testimony, concerning an alleged audio recording between Sharp and her mother, that Jordan's mother obtained. The trial court sustained Sharp's objection, prohibiting the introduction of such evidence. Thereafter, Jordan did not proffer the alleged audio recording.

When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence. La. Code Civ. P. art. 1636(A). However, the evidence excluded by the trial court below must be available for appellate review. Without a proffer, appellate courts have no way to ascertain the nature of the excluded testimony. Error may not be predicated upon a ruling that excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by counsel. In those instances, it is incumbent upon the party who contends his evidence was improperly excluded to make a proffer, and if he fails to do so, he cannot contend that the exclusion of such evidence was erroneous. See **Fernandez v. Pizzalato**, 2004-1676 (La. App. 4th Cir. 4/27/05), 902 So.2d 1112, 1124; **Lonesome Development, LLC v. Town of Abita Springs**, 2021-1463 (La. App. 1st Cir. 6/29/22), 343 So.3d 831, 844, writ denied, 2022-01158 (La. 11/1/22), 349 So.3d 3. Although the evidentiary rules are relaxed in child custody proceedings, because Jordan did not proffer the alleged audio recording, this court has no ability to properly review its exclusion. See La. C.E. art. 1101(B)(2).

Lastly, Jordan argues the trial court erred in failing to appoint a parenting coordinator to "assist [him and Sharp] in their communication and conflict resolution[.]" Comment (A) to La. R.S. 9:358.1 states:

10

> Parenting coordination is a child-focused alternative dispute resolution process in which a duly qualified parenting coordinator assists parents or persons exercising parental authority to implement a parenting plan by facilitating the resolution of their disputes in a timely manner and by reducing their child-related conflict so that the children may be protected from the impact of that conflict. The parenting coordinator assists the parties in promoting the best interests of the children by reducing or eliminating child-related conflict through the use of the parenting coordination process.

Louisiana Revised Statutes 9:358.1(A) provides, "[o]n motion of a party or on its own motion, the court may appoint a parenting coordinator in a child custody case for good cause shown if the court has previously entered a judgment establishing child custody, other than an ex parte order. The court shall make the appointment on joint motion of the parties." "Good cause" includes the following: (1) a determination by the court that either or both parties have demonstrated an inability or unwillingness to collaboratively make parenting decisions without the assistance of others or insistence of the court; (2) an inability or unwillingness to comply with parenting agreements and orders; (3) a determination by the court that either or both parties have demonstrated an ongoing pattern of unnecessary litigation; (4) a refusal to communicate or difficulty in communicating about and cooperation in the care of the children; and (5) a refusal to acknowledge the right of each party to have and maintain a continuing relationship with the children. **Council v. Livingston**, 2016-1228 (La. App. 4th Cir. 9/20/17), 2017 WL 4161681, * 10, writ denied, 2017-1773 (La. 12/5/17), 231 So.3d 30, *citing*, **Palazzolo v. Mire**, 2008-0075 (La. App. 4th Cir. 1/7/09), 10 So.3d 748, 779; see also La. R.S. 9:358.1, Comment (C). The trial court should also take into account financial hardship, as the appointment of a parental coordinator is prohibited if one party cannot pay his or her apportioned cost. **Griffith v. Latiolais**, 2010-0754 (La. 10/19/10), 48 So.3d 1058, 1071.

Although requested by Jordan, the trial court did not find it necessary to appoint a parenting coordinator, explaining:

11

I've been doing this for approximately ten years now as a judge, practiced prior to that for a lengthy amount of time. I will tell you it's – it's rare that I have people who come in this court like the two of you, who have apparently been working extraordinarily well together over the last year. The amount of communication that you have both testified to that you share with one another [...] is to be commended. I have often told people that the problems that are going to occur relative to custody are going to center around a lack of communication. And you have done a fantastic job of communicating with each other, including one another in making decisions about what's in [N.B.J.'s] best interest. I completely understand that you have a fundamental disagreement about some of the things that are in [N.B.J.'s] best interest, and that's why we have the judgment, so you can rely back on the judgment when you can't agree.

Mr. Jordan, you've requested a parenting coordinator be appointed in this matter. I – I don't have a problem appointing a parenting coordinator when the parties agree that one needs to be appointed. But at the end of the day, the parenting coordinator really has a lack of authority. They're more like a mediator to try to help you resolve issues, but they don't have the authority to make a decision for you. That's ultimately my job when you have a disagreement.

Ms. Sharp testified, you know, I think that you have had some compromises about [N.B.J.] along the way. There's been concessions made by both of you about what's in [N.B.J.'s] best interest, and then occasionally [there will] be times when you just say we're going to rely on the judgment. And I think that's the only thing the parenting coordinator would do. Therefore, I'm going to deny your request for a parenting coordinator.

Although Jordan testified he believed a parenting coordinator would be helpful to avoid "harassing messages" from Sharp, and that such an appointment would "remove[] the emotions from things[,]" based on our review, especially in light of the trial court's extensive reasoning thereto, we find no abuse of discretion by the trial court in refusing to appoint a parenting coordinator.

## CONCLUSION

The trial court's September 26, 2023 judgment is affirmed. Costs of this appeal are assessed to the appellant, Joshua Malone Jordan.

**AFFIRMED.**

12